In re SCHOOL ASBESTOS LITIGATION.

KAISER GYPSUM COMPANY, INC., Petitioner,

v.

The Honorable James McGirr KELLY, Nominal Respondent,

and

Barnwell School District No. 45, Respondent.

In re SCHOOL ASBESTOS LITIGATION.

UNITED STATES GYPSUM COMPANY, Petitioner,

v.

The Honorable James McGirr KELLY, Nominal Respondent,

and

Barnwell School District No. 45, School District of Lancaster, Manheim Township School District, Lampeter–Strasburg School District, Board of Education of the Memphis City Schools, and a Conditionally Certified Class, Respondents.

In re SCHOOL ASBESTOS LITIGATION.

FIBREBOARD CORPORATION, Petitioner,

v.

The Honorable James McGirr KELLY, Nominal Respondent,

and

Barnwell School District No. 45, School District of Lancaster, Manheim Township School District, Lampeter–Strasburg School District, Board of Education of the Memphis City Schools, and a Conditionally Certified Class, Respondents.

In re SCHOOL ASBESTOS LITIGATION.

W.R. GRACE & CO., Petitioner,

v.

The Honorable James McGirr KELLY, Nominal Respondent,

and

Barnwell School District No. 45, School District of Lancaster, Manheim Township School District, Lampeter–Strasburg School District, Board of Education of the Memphis City Schools, and a Conditionally Certified Class, Respondents.

Nos. 90–1125, 90–1126, 90–1185 and 90–1199.

United States Court of Appeals, Third Circuit.

Nos. 90–1125, 90–1126 and 90–1185 Argued Sept. 19, 1990.

No. 90–1199 Submitted under Third Circuit Rule 12(6) Sept. 19, 1990.

Decided Dec. 13, 1990.

Rehearing and Rehearing In Banc Denied Jan. 9, 1991 in 90–1125.

Daniel J. Ryan, Jr., Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., Patrick J. Hagan, Kincaid, Gianunzio, Caudle & Hubert, Oakland, Cal., for petitioner, Kaiser Gypsum Co. Inc.

Joseph B.G. Fay (argued), J. Gordon Cooney, Jr., John H. Lewis, Jr., Andrew D. Leipold, Morgan, Lewis & Bockius, Philadelphia, Pa., for petitioner U.S. Gypsum Co.

Walter R. Milbourne, Timothy W. Callahan, II., Frank M. D'Amore, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for petitioner, Fibreboard Corp.

Denis McInerney, Allen S. Joslyn, Cahill, Gordon & Reidel, New York City, for petitioner, W.R. Grace & Co.

David Berger (argued), Harold Berger, Warren D. Mulloy, Thomas F. Hughes, Berger & Montague, Philadelphia, Pa., Daniel A. Speights, Speights & Runyan, Hampton, S.C., Herbert B. Newberg, Harvey Kronfeld, Gerald E. Wallerstein, Sandra L. Duggan, Philadelphia, Pa., for respondents, Barnwell School Dist. No. 45, School District of Lancaster, Manheim Tp. School Dist., Lampeter–Strasburg School Dist., Bd. of Educ. of the Memphis City Schools, and a Conditionally Certified Class; Charles Alan Wright, Austin, Tex., of counsel.

Before SCIRICA, COWEN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

These proceedings arise out of an on-going federal diversity class action, *In re Asbestos School Litig.*, 104 F.R.D. 422 (E.D.Pa.1984), *aff'd*, 789 F.2d 996 (3d Cir.), *cert. denied*, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986), and require us to decide whether to grant the petitioners' requests for a writ of mandamus or prohibition directing the district court to dismiss the class action complaints for lack of subject matter jurisdiction. Because we conclude that the petitioners have not met their burden of showing a "clear and indisputable" lack of subject matter jurisdiction over the class, we will deny the consolidated petitions for a writ of mandamus in Nos. 90–1125 and 90–1185, and the petition for a writ of prohibition in No. 90–1126. We also consolidate with these petitions W.R. Grace & Co.'s petition for a writ of prohibition in No. 90–1199, and will deny it as well.

### I.

On January 17, 1983, the class action giving rise to these petitions was filed in the district court on behalf of a national class consisting of all public and private elementary and secondary schools throughout the country. The complaints alleged claims against approximately fifty manufacturers and producers of asbestos-containing materials, which purportedly were used in the construction of some of the class plaintiffs' school buildings. On September 28, 1984, the district court certified the class action pursuant to F.R.Civ.P. 23(b)(3), and we affirmed the class certification on May 1, 1986. *In re Asbestos School Litig.*, 104 F.R.D. 422 (E.D.Pa. 1984), *aff'd*, 789 F.2d 996 (3d Cir.), *cert. denied*, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986). In 1989, several defendant manufacturers requested the dismissal of the federal class action of certain unnamed members on the basis that (1) not every class member has a claim in excess of the $10,000 jurisdictional amount; (2) complete diversity of citizenship between all absent class members and all defendants is required in a diversity-based class action; and (3) asbestos property damage claims are "local actions" involving real estate and may only be brought in the state where the real estate is located. After briefing and oral argument, the district court issued Pretrial Order No. 191 on May 1, 1989, 1989 WL 47035, directing the class plaintiffs to amend their complaints to conform with 28 U.S.C. § 1332(a). The plaintiffs accordingly amended their complaints to allege an amount in controversy of $10,000 for each plaintiff class member except a hypothetical small number of school districts, not yet identifiable, that only have asbestos inspection costs under $10,000. The complaints also averred that the citizenship of each named class representative

was diverse from that of each defendant manufacturer.

On November 15, 1989, after several defendants had filed challenges to the amended complaints, the district court issued Pretrial Order No. 197, 1989 WL 138835, in which it declined to dismiss the class action for lack of subject matter jurisdiction. In its memorandum and order, the district court observed that *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), requires dismissal of only those class members who fail to meet jurisdictional amount requirements. Because those plaintiffs could not be readily determined, the district court concluded that "[a]ny potential jurisdictional problems raised in this case can be cured at trial by entering final judgment at the damages stage of the trial only against those plaintiffs that have sustained the burden of proving damages in excess of $10,000." App. at 2–3. The district court also determined that complete diversity between all class members and all defendants is not required, and that the "local action" doctrine is inapplicable to the asbestos property damages claims in this class action. App. at 4–6.

After the district court refused to certify Order No. 197 for interlocutory review under 28 U.S.C. § 1292(b), two defendant manufacturers, Kaiser Gypsum Company, Inc. (No. 90–1125) and Fibreboard Corporation (No. 90–1185), filed petitions for a writ of mandamus directing the district court to dismiss the pending complaints and to refrain from any adjudication on the merits until the plaintiffs have cured all jurisdictional defects. A third defendant, United States Gypsum Company, filed a petition for writ of prohibition (No. 90–1126), in which W.R. Grace & Co. joined (No. 90–1199), seeking similar relief. These are the four petitions consolidated before us.

## II.

■ Federal courts have the power to issue writs of mandamus or prohibition under the All Writs Act, 28 U.S.C. § 1651(a), which provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." That two petitioners in this case have requested a writ of mandamus and two have requested a writ of prohibition is unimportant; it does not affect the relief requested. Although a writ of mandamus may appear more appropriate when the request is for an order mandating action, and a writ of prohibition may be more accurate when the request is to prohibit action, modern courts have shown little concern for the technical and historic differences between the two writs. 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure: Jurisdiction* § 3932 (1977 & Supp.1990); *see Ex parte Simons*, 247 U.S. 231, 239–40, 38 S.Ct. 497, 497–98, 62 L.Ed. 1094 (1918); *Jenkins v. Weinshienk*, 670 F.2d 915, 917 n. 1 (10th Cir.1982). Under the All Writs Act, the form is less important "than the substantive question [of] whether an extraordinary remedy is available." *In re Davis*, 730 F.2d 176, 181 & n. 10 (5th Cir. 1984).

■ The Supreme Court admonishes federal appellate courts to exercise their writ power with caution. *Kerr v. United States Dist. Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976); *see DeMasi v. Weiss*, 669 F.2d 114, 116–17 (3d Cir.1982). Because the remedy is so extreme, courts should invoke it only "in extraordinary situations." *Kerr*, 426 U.S. at 402, 96 S.Ct. at 2123. Traditionally, federal courts have used the power "only to confine inferior courts to their lawful jurisdiction or to compel them to exercise authority when they have a duty to do so." *DeMasi*, 669 F.2d at 117 (citing *Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967)). In defining "jurisdiction," the Supreme Court has avoided a "narrow and technical" construction, directing that "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Will*, 389 U.S. at 95, 88 S.Ct. at 273 (quoting *DeBeers Consolidated Mines, Ltd. v. United States*,

325 U.S. 212, 217, 65 S.Ct. 1130, 1133, 89 L.Ed. 1566 (1945)).

Two important policy considerations support the concept that writs of mandamus or prohibition should be granted only sparingly. First, mandamus actions "'have the unfortunate consequence of making the [district court] judge a litigant ...' in the underlying case." *Kerr*, 426 U.S. at 402, 96 S.Ct. at 2124 (quoting *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 384–85, 74 S.Ct. 145, 148–49, 98 L.Ed. 106 (1953)). Second, frequent use of writs of mandamus would ignore the important judicial goal of avoiding piecemeal appellate review. *Kerr*, 426 U.S. at 403, 96 S.Ct. at 2124; *DeMasi*, 669 F.2d at 117.

■ To ensure the use of writs in only "extraordinary situations," the Supreme Court has established two prerequisites to the issuance of a writ: (1) that the petitioner have no other "adequate means to attain the [desired] relief," and (2) that the petitioner meet its burden of showing that its right to the writ is "clear and indisputable." *Kerr*, 426 U.S. at 403, 96 S.Ct. at 2124; *see DeMasi*, 669 F.2d at 117. Once these two prerequisites are met, the court's decision of whether to issue the writ is largely one of discretion. *Kerr*, 426 U.S. at 403, 96 S.Ct. at 2124.

### III.

■ Although recognizing constraints on the federal courts' writ power, the petitioners argue that mandamus or prohibition generally is appropriate to prevent the district court from acting outside its jurisdictional authority. We agree. Courts traditionally have employed writs to restrain jurisdictional excesses, particularly when a lower court has acted without authority to do so. *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). However, mere doubt regarding the trial court's subject matter jurisdiction is insufficient to invoke a court's writ power. Justice Brandeis, speaking for the Court, has stated:

> If the lower court is clearly without jurisdiction, the writ will ordinarily be granted to one who at the outset objected to

the jurisdiction, has preserved his rights by appropriate procedure and has no other remedy. If, however, the jurisdiction of the lower court is doubtful ... or if the jurisdiction depends upon a finding of fact made upon evidence which is not in the record ... or if the complaining party has an adequate remedy by appeal or otherwise ... the writ will ordinarily be denied.

*Ex parte Chicago, R.I. & Pac. Ry.*, 255 U.S. 273, 275–76, 41 S.Ct. 288, 289–90, 65 L.Ed. 631 (1921) (citations omitted); *see In re Thornburgh*, 869 F.2d 1503, 1517–18 (D.C.Cir.1989) ("We do not find the 'clear and indisputable' lack of jurisdiction in the district court ... that is necessary to warrant a writ of mandamus."). Thus, only if the petitioners show that the district court's lack of subject matter jurisdiction is "clear and indisputable" and that no other adequate means exists to attain relief should we grant the extraordinary relief requested in these petitions.

The petitioners suggest three jurisdictional defects supporting their request for a writ of mandamus or prohibition: (1) not every class member has a claim in excess of the then-applicable $10,000 jurisdictional amount; (2) complete diversity of citizenship between all absent class members and all defendants is required in a diversity-based class action; and (3) asbestos property damage claims are "local actions" involving real estate and may only be brought in the state where the real estate is located. For the reasons stated below, none of these arguments demonstrates the district court's "clear and indisputable" lack of subject matter jurisdiction over the class.

The petitioners also argue that pendent party jurisdiction is not available to the class plaintiffs in lieu of federal diversity subject matter jurisdiction. Because we decide that the petitioners have failed to meet their burden of showing that diversity jurisdiction does not exist, we need not reach their claim of lack of pendent party jurisdiction.

## IV.

The petitioners first contend that the class plaintiffs (the respondents) have not met their burden of pleading the $10,000 jurisdictional amount in controversy required under former 28 U.S.C. § 1332(a) (Congress since has amended the statute to require an amount in controversy of $50,-000). In their amended complaints, the class plaintiffs concede that a hypothetical small portion of the class will not be able to meet the amount in controversy. However, the petitioners claim that as many as sixty percent of the school districts will not be able to meet the jurisdictional amount because, according to an EPA report, they do not have friable asbestos-containing materials in one or more of their buildings.

■ It is well established that "[e]ach plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case...." *Zahn v. International Paper Co.*, 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973). However, as noted in the district court's memorandum and order, *Zahn* does not require that an entire class action be dismissed for lack of subject matter jurisdiction over some of the class members. Rather, the court is required only to dismiss those class members whose claims appear to a "legal certainty" to be less than the jurisdictional amount. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

■ Because it was not apparent which class plaintiffs should be dismissed, the district court chose to delay dismissing any plaintiffs until it is shown *at trial* that their claims do not meet the jurisdictional amount. Relying on F.R.Civ.P. 12(d), the district court noted that "[a]ny potential jurisdictional problems raised in this case [could] be cured at trial by entering final judgment at the damages stage of the trial only against those plaintiffs that have sustained the burden of proving damages in excess of $10,000." App. at 2-3.

Under F.R.Civ.P. 12(d), a judge who is deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may postpone the decision until trial. The rule specifically provides that a Rule 12(b) motion, "whether made in a pleading or by motion, ... shall be heard and determined before trial on application of any party, *unless the court orders that the hearing and determination thereof be deferred until the trial.*" F.R.Civ.P. 12(d) (emphasis added).

At this juncture, we are constrained to note how the dissent construes the action of the district court here. It interprets the district court's language, "potential jurisdictional problems ... be cured *at* trial," to mean *after* trial (emphasis added). Thus, it states that the district court's order purported to " 'cure' the jurisdictional deficiency *after* trial," Dissenting opinion at 1321 (emphasis added); to "postpon[e] the resolution of a jurisdictional failure until *after* trial," *id.* (emphasis in original); to defer "resolution of the jurisdictional question until after a trial," *id.* at 1322 n. 4; to sanction dismissal only "where a plaintiff has failed to establish damages for less than the jurisdictional minimum after trial," *id.* at 1324; and to postpone "resolution of jurisdictional questions until after trial," *id.* at 1324.

We believe that the dissent's interpretation is both unfair and inaccurate. The district court's language *"cured at trial"* is free from ambiguity and is consistent with the clear authority of Rule 12(d) permitting the jurisdictional decision to be "deferred until the trial."

The Court of Appeals for the Sixth Circuit, in *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188 (6th Cir.1988), has considered the effect of Rule 12(d). In *Sterling*, the defendant had filed two separate Rule 12(b)(1) motions seeking pretrial dismissal of the class action because certain representative class plaintiffs did not allege the appropriate amount in controversy. Rather than immediately dismissing any plaintiffs' claims, the district court deferred the jurisdictional decision until trial. The trial judge observed:

[I]t also seems to me that it is not necessary *at this point* for the court to whole-

sale order a dismissal of all those potential class members who may not at this point have pleaded, because it seems to me that's a matter that might well come up at some point down the road after the initial phase of the case is tried.... *[W]hen you get down to establishing amounts in a case such as this, where there is a jury trial, it puts a burden on the court that the court really doesn't want to undertake,* and that is an assessment of claims at this point to try and make a determination of whether a jurisdictional amount, in fact, can be asserted at this point....

*Id.* at 1195 n. 5 (emphasis added). The appellate court determined that the trial judge's action was not improper. Moreover, the court observed that the "method and timetable" for deciding a Rule 12(b) motion is "left to the *sole* discretion of the trial judge." *Sterling,* 855 F.2d at 1195 (emphasis added).

As noted by the district court, however, only one of the motions to dismiss in this case was a Rule 12(b)(1) motion; the other was premised on Rule 12(h)(3). Thus, even if we apply Rule 12(d) to the 12(b)(1) motion, we still must consider the language in Rule 12(h)(3).

Rule 12(h)(3) provides that subject matter jurisdiction can never be waived: "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." However, we find that Rule 12(h)(3) does not require dismissal at this juncture because (1) it is not clear that the district court lacks jurisdiction over the subject matter, and (2) a court does not have to dismiss a claim if the jurisdictional failure can be cured. *See Freistak v. Egger,* 551 F.Supp. 238, 241 (M.D.Pa.1982); *Florida Lime & Avocado Growers, Inc. v. Jacobsen,* 169 F.Supp. 774 (D.C.Cal.1958), *rev'd on other grounds,* 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960); *see also* 5A C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d* § 1393, at 772–73 (1990).

To accept the argument advanced by the petitioners, we would have to conclude that Rule 12(h)(3) nullifies the unequivocal language of Rule 12(d): "The defense[ ] specifically enumerated (1) ... in subdivision (b) of this rule [lack of jurisdiction over the subject matter] ... shall be heard and determined before trial on application of any party, unless the court orders that the hearing and determination thereof be deferred until the trial." We do not believe that nullification of Rule 12(d) was Congress's intent in approving the Rule 12(h)(3) submission of the Advisory Committee on Civil Rules. We do not believe also that Rule 12(h)(3) requires the district court to rule immediately upon the presentation of a motion to dismiss; we believe that in *ipsissimis verbis* Rule 12(d) authorizes the district court to defer the hearing and determination.

Because we think that the two provisions must be integrated to provide consistency and be accorded full meaning, we hold that Rule 12(h)(3) invests the district court with the *power* to dismiss the action, and that Rule 12(d) discloses *when* this power may be exercised. Any other interpretation would mean that Rule 12(h)(3) strips away completely the discretionary authority conferred in Rule 12(d) when a lack of subject matter jurisdiction is raised.

Applying Rules 12(d) and 12(h)(3) and the rationale in *Sterling,* we conclude that the district court had the discretionary authority to delay until trial the dismissal of those class members that cannot meet the amount in controversy. Postponing dismissal of such plaintiffs not only appears prudent, but it meshes with our policy. In *Nelson v. Keefer,* 451 F.2d 289 (3d Cir. 1971), we stated that "[i]t is our intention to require removal from the trial list of those 'flagrant' cases where it can be determined in advance 'with legal certainty' that the congressional mandate of $10,000 minimum was not satisfied." *Id.* at 292. This federal class action is not one of those "flagrant" cases. Conceding that some of the class plaintiffs will not meet the jurisdictional amount, the district court is willing to dismiss such plaintiffs once they are identified at trial. We find no abuse of discretion in this approach.

## V.

The petitioners next argue that the class must be dismissed due to lack of complete diversity of citizenship. They mount the novel contention that under 28 U.S.C. § 1332(a)(1) the citizenship of each class plaintiff must be diverse from the citizenship of each defendant manufacturer. We reject this argument.

From settled class action cases emerges the precept that in a federal class action only the citizenship of the named class representatives must be diverse from that of the defendants. *Snyder v. Harris,* 394 U.S. 332, 340, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319, *reh'g denied,* 394 U.S. 1025, 89 S.Ct. 1622, 23 L.Ed.2d 50 (1969); *see In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 162 (2d Cir.1987); 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 23.95, at 23–546 (2d ed.1987); C. Wright, *Law of Federal Courts* § 31, at 170 (4th ed.1983); 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3606, at 424 (1984 & Supp.1990). What petitioner Kaiser Gypsum Co., Inc. describes in its brief as "dictum in *Snyder v. Harris,"* Petitioner's Brief at 23, the Court of Appeals for the Second Circuit describes as "hornbook law, based on 66 years of Supreme Court precedent":

> Although we understand the need to preserve issues for further review, we confess a certain surprise at the vigor with which this argument was pressed in this court and the amount of time that was devoted to it at oral argument. It is hornbook law, based on 66 years of Supreme Court precedent, that complete diversity is required only between the named plaintiffs and the named defendants in a federal class action. 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3606, at 424 (2d ed.1986) ("[t]he courts look only to the citizenship of the representative parties in a class action"). As the Supreme Court noted in *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969):

> > Under current doctrine, if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant and have nothing to fear from trying the lawsuit in the courts of their own State. See *Supreme Tribe of Ben–Hur v. Cauble,* 255 U.S. 356 [41 S.Ct. 338, 65 L.Ed. 673] (1921).

> > 394 U.S. at 340, 89 S.Ct. at 1059.... Thus, if appellants' theory of class action jurisdiction is to become law, this must be done by the Supreme Court.

*Agent Orange,* 818 F.2d at 162. The trial courts in this circuit have not questioned this precept. *Pirrone v. North Hotel Assocs.,* 108 F.R.D. 78, 83 n. 2 (E.D.Pa.1985); *McMahon Books, Inc. v. Willow Grove Assocs.,* 108 F.R.D. 32, 40 n. 5 (E.D.Pa.1985). Because the complaints in the case before us properly allege that the citizenship of the named class representatives is diverse from that of the defendants, the requisite diversity of citizenship is present.

The petitioners unconvincingly argue that *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), overruled *Snyder* sub silentio. They claim that *Finley* requires complete diversity of citizenship between all class plaintiffs and all defendants in Rule 23(b)(3) class actions. This argument is unimpressive for several reasons.

First, *Finley* does not even address the *Snyder* rule. The only issue before the Court in *Finley* was whether the Federal Tort Claims Act "permits an assertion of pendent jurisdiction over additional parties." *Id.* 109 S.Ct. at 2005. Relying on precedent rejecting pendent party jurisdiction, *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), the Court held that a "grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction

over additional claims by or against different *parties."* *Finley,* 109 S.Ct. at 2010 (emphasis added).

At no point did the Supreme Court even allude to the diversity requirement in federal class actions. Surely, if *Finley*'s objective was to overrule *Snyder* by implication and to require complete diversity between all plaintiffs and all defendants in class actions, the Court at least would have made direct or indirect reference to the subject. The Court knows how to state explicitly that a previous decision is no longer to be followed; it knows how to frame a precept in the form of a major premise in which the rules of logic support an implication that a previous holding is threatened; it also knows how to send signals that it will be reconsidering a previous ruling. No such reference to diversity class actions—by express direction, implication or signal-sending—is present in *Finley.* To suggest that a subliminal message can be found therein, as urged by the petitioners here, is to concoct a fictitious extravaganza that has no place in a serious argument before this court. The petitioners have not submitted a single case supporting their position that *Finley* has obliterated the teachings of *Snyder v. Harris;* nor has our independent research discovered any such decision.

Moreover, counsel for United States Gypsum Co. and Kaiser Cement Corp. candidly explained at oral argument the motive behind their argument that *Finley* now requires complete diversity of all members of the class. Counsel stated that the purpose was to destroy nationwide federal diversity class actions:

> THE COURT: [I]f we will accept your subject matter jurisdiction arguments and those of your colleague or your friend who just argued—
>
> MR. KIRBY: Both.
>
> THE COURT:—that what this is actually doing is really virtually precluding class actions in diversity matters?
>
> MR. KIRBY: Nationwide class actions would, we sincerely hope, be dead.

Transcript of Oral Argument at 78–79, *In re School Asbestos Litig.,* 921 F.2d 1330

(3d Cir.1990). Here we must proceed with caution. It is for the Congress, not the courts, to legislate changes in the diversity laws.

In 1988 Congress reconsidered the diversity jurisdiction of the federal courts. Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702, 102 Stat. 4642 (1988) (partly codified as amended at 28 U.S.C. § 1332). Although the House Subcommittee on Courts, Civil Liberties, and the Administration of Justice strongly recommended that "virtually all of the Federal court jurisdiction based on the citizenship of the parties" be eliminated, the full Committee on the Judiciary rejected this proposal, suggesting instead that the jurisdictional amount in controversy be raised from $10,000 to $50,000. H.R.Rep. No. 100–889, 100th Cong., 2d Sess., *reprinted in* 1988 U.S.Code Cong. & Admin.News 5982, 5987–88. One of the principal reasons the Committee rejected the complete abolition of diversity jurisdiction was the opposition of key officials responsible for state court systems. Siegel, *Commentary on 1988 Revision,* in 28 U.S.C. § 1332 (West Supp.1990). Congress accepted the Committee's compromise and voted merely to raise the amount in controversy. *Id.* Notwithstanding the discussions regarding abolition, Congress did not make any attempt in its 1988 revision to exempt federal class actions from diversity jurisdiction.

The legislative history of 28 U.S.C. § 1332 and the Congressional endorsement of Rule 23(b)(3) class actions manifest Congress's support of diversity-based class actions. If the petitioners wish to sound the death knell on such class actions, their sounding board is the Congress and not this court.

### VI.

■ Petitioner Kaiser Gypsum Company also contends that because the "local action" doctrine applies to any action directly affecting land and real property, the district court's subject matter jurisdiction is limited by the doctrine to claims related to property located in Pennsylvania. The district court rejected this argument, deter-

mining that the plaintiffs' claims are "largely tort claims," which are "transitory" rather than "local" in nature.

■■■ The law distinguishes between transitory and local actions. Local actions are essentially *in rem* and may only be prosecuted "where the thing on which they are founded is situated." 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3822, at 204–05 (1986) (quoting *Casey v. Adams*, 102 U.S. 66, 67–68, 26 L.Ed. 52 (1880)). A transitory action may be brought wherever venue is proper. *Id.*

The class plaintiffs cite *Dayton Indep. School Dist. v. U.S. Mineral Prods. Co.*, No. B–87–00507–CA (E.D.Tex. Feb. 14, 1989), as authority for their contention that this class action is transitory. In an action involving the same allegations and legal theories as this case, the *Dayton* court held:

> Such claims sound primarily in *product liability and in tort*. The gravamen of Plaintiff's complaint is that the presence of Defendants' products in their buildings poses a health risk to building workers and occupants which must be addressed.
>
> In several years of managing large multi-plaintiff asbestos litigation such as the cases presently before the Court, there has been no occasion to consider title to or possession of any of the buildings which contain the asbestos products at issue, or to resolve any issues involving principles of property law. The parties may use whatever terms they please to describe these cases, but the fact remains that, regardless of the nomenclature used, *these claims are transitory in nature rather than local in nature*. Suits such as these asbestos cases do not involve title to or possession of land such as would be governed by the local action doctrine. Rather, the Plaintiffs are seeking to recover monetary damages arising out of the alleged manufacture and sale of defective products, which "might have taken place anywhere." *The local action rule is not applicable to Plaintiff's claim.*

*Id.* (emphasis added). The district court in this case conceded in its order that questions relating to the ownership of some of the school buildings may arise later in the litigation. App. at 6. As an alternative to dismissing the complaints now, the district court determined that it could dismiss those school districts for lack of subject matter jurisdiction once the local action doctrine is shown to apply.

We agree that it is premature to invoke the local action doctrine at this time. Because the alleged claims appear transitory and are not bound to any issues of title or possession of real property, we reject Kaiser Gypsum's local action argument.

### VII.

We conclude that petitioners have not met their burden of showing a "clear and indisputable" lack of federal diversity subject matter jurisdiction in this case. Because they have failed to establish this prerequisite to the issuance of a writ, the consolidated petitions for a writ of mandamus or prohibition will be denied.

COWEN, Circuit Judge, dissenting.

At issue in these consolidated Fed.R. Civ.P. 23(b)(3) asbestos class action appeals are two fundamental questions of federal jurisdiction. The first is whether a district court has the power to hear a class action suit under its diversity jurisdiction, 28 U.S. C.A. § 1332(a) (1966 & Supp.1990), when there is substantial and uncontradicted evidence that a majority of the plaintiff class has less than the jurisdictional minimum amount in controversy in direct violation of the rule in *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). The district court held that it had the power to hear the cases without dismissing the class members who lacked jurisdictionally sufficient claims as long as it only entered final orders with respect to those claims which after litigation prove to be in excess of the jurisdictional minimum.

The second issue is whether in a class action diversity suit there must be complete diversity between all members of the

plaintiff class and all defendants, or whether it suffices for there to be diversity between only named plaintiffs who represent the plaintiff class and all defendants. The district court purported to follow a "well settled rule" which allows a class action to proceed even where complete diversity is lacking, provided that there is complete diversity between named plaintiffs and all defendants.

The majority today holds that the district court was acting within the bounds of its jurisdiction in proceeding to the merits despite the jurisdictional defects. In so holding, the majority breaks new ground in the field of federal jurisdiction. Because I believe that the district court lacks jurisdiction over these consolidated class actions and that the majority's decision today is unsupported by precedent and lacks a theoretical foundation, I must dissent.

## I.

All parties to this action agree that every plaintiff in a Rule 23(b)(3) class action must independently satisfy the amount in controversy requirement of section 1332(a) with a claim in excess of the jurisdictional minimum. *Zahn*, 414 U.S. at 301, 94 S.Ct. at 512 ("Each plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case—'one

plaintiff may not ride in on another's coattails.'") (quoting *Zahn v. International Paper Co.*, 469 F.2d 1033, 1035 (2d Cir. 1972)). Since only the main plaintiffs met the jurisdictional minimum in *Zahn*, the United States Supreme Court would not allow the suit to proceed as a class action. *See also Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) (separate claims in a class action suit could not be aggregated for the purpose of meeting the jurisdictional minimum amount in controversy requirement). *Zahn* requires that each distinct claim satisfy the jurisdictional minimum requirement because the Court interprets "matter in controversy" language in 28 U.S.C.A. § 1332(a) as relating to each claim in a class action suit, and not the total amount that might be claimed on the facts giving rise to the class action litigation. *Zahn*, 414 U.S. at 298–300, 94 S.Ct. at 510–511.

All parties to this action agree that some of the represented plaintiffs in this class action do not have claims meeting the jurisdictional minimum amount in controversy contained in former 28 U.S.C.A. § 1332(a).[1] Indeed, plaintiffs have admitted in their amended complaints that some plaintiffs cannot in good faith allege claims in excess of $10,000.[2] Furthermore, defendants have introduced uncontradicted evidence that when this case was filed as much as 60% of

---

**1.** At the time plaintiffs filed these suits, the statutory authority which empowered federal courts to exercise diversity jurisdiction read:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

(1) citizens of different States;

(2) citizens of a State, and foreign states or citizens or subjects thereof; and

(3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties.

28 U.S.C.A. § 1332(a) (1966).

**2.** On May 30, 1989, after the district court entered Pretrial Order No. 191, which directed plaintiffs to file amended complaints conforming to the requirements of 28 U.S.C.A. § 1332(a), the named plaintiffs amended their complaint to allege:

The plaintiff and all members of the class (*except a minimal portion thereof*), have

claims in excess of $10,000 for costs incurred *inter alia* in the inspection of the school buildings, and all other costs incidental thereto, and costs of repairs and replacement plus punitive damages. *Entities (not now identified) may exist which* own or operate very small school systems in which no friable or potentially friable asbestos-containing material exists and for whom punitive damages may not be recoverable who *cannot allege $10,000 in controversy.* (emphasis added).

Defendants have shown that 60% of the plaintiff class cannot meet the jurisdictional minimum. Nor can the plaintiffs inflate their damage allegation by including punitive damages in the amount alleged as being in controversy, since the class was not certified to seek punitive damages or to recover for costs incurred in connection with inspecting for asbestos-containing materials. The class certification was limited to claims for damages arising from actually friable materials.

the plaintiff class did not have claims exclusive of interest and costs in excess of the jurisdictional minimum.

Notwithstanding the apparently uniform understanding that every plaintiff in a Rule 23(b)(3) class action must independently meet the jurisdictional minimum amount in controversy, and that some plaintiffs in this class action do not meet that requirement, the district court declined to dismiss from the suits plaintiffs whose claims are jurisdictionally insufficient. Instead, the district court concluded that it could "cure" the jurisdictional deficiency after trial by entering judgment on behalf of claims that proved to be in excess of $10,000. As support for this novel approach, the district court cited Rules 12(d) and 12(h)(3). Amazingly, the majority today allows the district court to proceed on that basis. Because there is no authority for postponing the resolution of a jurisdictional failure until *after* trial, I would grant the petition and order the writ of mandamus to issue directing that the amended complaint be dismissed.

At this juncture, I must respond to the majority's criticism that I have unfairly and inaccurately characterized the district court's action respecting the "amount in controversy" question. I state throughout my dissent that the district court has decided to postpone until *after* trial resolution of the jurisdictional questions. Maj. op. at 1315. I stand by this characterization.

This class action is certified to resolve the common factual questions that underlie the class members' claims in order to facilitate resolution of asbestos-in-school claims for property damage. Pre–Trial Order No. 235, entered May 17, 1990, identified the following common issues which will be resolved in the first phase of a bifurcated trial:

A. The level at which various kinds of friable asbestos, in various forms, is hazardous in school buildings.

B. Defendants' knowledge of the health hazards of asbestos.

C. Defendants' failure to properly warn or test.

D. Defendants' fraudulent concealment of knowledge of the dangers of asbestos.

E. Defendants' conspiracy to suppress knowledge of the dangers of asbestos.

F. Punitive damages.

G. Common defenses.

Pre–Trial Order No. 235. Resolution of these common factual questions will bring us no closer to determining which plaintiffs must be dismissed because they have jurisdictionally insufficient claims.

Indeed, the district court expressly stated in Pre–Trial Order No. 235 that "Determination of the conduct of any additional phase(s) shall be deferred until the completion of Phase I." Pre–Trial Order No. 235. In other words the identity of the plaintiffs who must be dismissed because they lack jurisdictionally sufficient claims will be deferred until *after* a trial resolving the common factual questions.

## A.

Rule 12(d) allows a court to defer until trial certain Rule 12(b) dismissal motions, including a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Rule 12(h)(3) states, "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

The argument the district court apparently accepted is that it does not appear the court lacks subject matter jurisdiction until a trial on damages demonstrates damages do not exceed the jurisdictional minimum. Hence, the district court can defer resolution of the jurisdictional question until it has enough information to reach a supported conclusion. When it appears that the court lacks jurisdiction over a particular plaintiff; that is, at a damages stage trial, the party will immediately be dismissed from the case.

The primary problem with the district court's approach of deferring resolution of the jurisdictional question is that such questions must be resolved at the beginning of a case, not the end. *See Employ-*

*ers Ins. of Wausau v. Crown Cork & Seal Co. Inc.,* 905 F.2d 42, 45 (3d Cir.1990) ("a federal court is bound to consider its own jurisdiction preliminary to consideration of the merits.") (quoting *Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Philadelphia,* 657 F.2d 29, 36 (3d Cir.1981)); *See also Carlsberg Resources Corp. v. Cambria Savings & Loan Ass'n,* 554 F.2d 1254, 1257 (3d Cir.1977) ("federal courts should resolve any questions that they may have as to the existence of diversity before proceeding to a decision on the merits.").

*Wausau* was a diversity action in which the plaintiff insurance company sought a declaration pursuant to the Declaratory Judgment Act of the nature of its obligations arising from certain environmental liabilities that resulted from Wausau's issuance of general liability insurance. One of the defendants (which was not an insurance company) moved to realign the parties so that all the insurance companies with similar interests would be federal plaintiffs. The court declined to make findings on the motion for realignment (which would have created jurisdictional difficulties if granted). Instead, the district court stayed the federal action on the grounds that there was a state action already pending which would litigate the same questions. We vacated the district court's order and remanded for a resolution of the motion to realign. On remand, the district court would be required to resolve any jurisdictional questions before disposing of the case by stay or dismissal. We noted that "[t]he district court's grant of the stay amounts to the exercise of its dominion over this matter, clearly presupposing that it had subject matter jurisdiction in the first instance. It was therefore bound to first consider [defendant]'s challenge to the diversity between the parties raised in [defendant]'s motion for realignment before it granted the stay." *Wausau,* 905 F.2d at 45. The same is true with respect to the challenge to the district court's subject matter jurisdiction in this case.[3]

Ignoring this Court's long-standing requirement that courts resolve jurisdictional questions at the beginning of a case, the majority relies on a recent decision by the Court of Appeals for the Sixth Circuit for the proposition that a district court may defer until trial the resolution of any jurisdictional questions. *See Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1195–96 (6th Cir.1988).[4] In *Sterling,* certain

---

**3.** In requiring that the existence of diversity jurisdiction be resolved at the beginning of the case rather than the end, federal courts espouse well accepted principles of federalism. *See, e.g., Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.")

**4.** Although I do not consider it to be a fatal flaw, I note that the majority cites *Sterling* and Rule 12(d) as authority for the proposition that a district court may postpone resolution of the jurisdictional question until a trial on the merits. In this case, the district court has deferred resolution of the jurisdictional question until *after* a trial on the merits and not merely *until* trial. That difference is substantial because Rule 12(d) is the only authority the majority cites for postponing resolution of the question for so long.

There are situations where factual findings could determine the existence of subject matter jurisdiction in a diversity case. For instance, where there is a dispute about the location of a corporation's principal place of business and resolution of that dispute will determine whether diversity exists, it might make sense to defer resolution of that question until trial. *See, e.g., Village Fair Shopping Center Co. v. Sam Broadhead Trust,* 588 F.2d 431, 433 (5th Cir.1979) (as regards diversity jurisdiction, the determination of a corporation's principal place of business is a question of fact). Nevertheless, the existence of a dispute as to a corporation's principal place of business would not excuse compliance with Rule 8(a)(1) which requires plaintiffs to plead in their complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends...." Where a plaintiff fails to show the grounds for federal jurisdiction in his complaint, the court must dismiss the case, unless the defect can be corrected by amendment. *Smith v. McCullough,* 270 U.S. 456, 459, 46 S.Ct. 338, 339, 70 L.Ed. 682 (1926); *Randazzo v. Eagle–Picher Indus., Inc.,* 117 F.R.D. 557, 558 (E.D. Pa.1987).

In the case before us, plaintiffs have failed to make sufficient jurisdictional allegation with respect to the amount in controversy of each represented plaintiff. Because plaintiffs have admitted this in their amended complaints, there is no factual question to resolve. The only question is which plaintiffs must be dismissed—

class action plaintiffs failed to allege in their complaints that they had claims in excess of the jurisdictional minimum for diversity cases. In response to defendant's motion under Rule 12(b)(1) to dismiss for want of subject matter jurisdiction, the district court, relying on Rules 12(d) and 12(h)(3), deferred resolution of the jurisdictional question until trial. The Sixth Circuit affirmed. At first blush, *Sterling* appears to support the majority's reading of Rules 12(d) and 12(h)(3). The facts of *Sterling*, however, reveal that *Sterling* does not contravene our long-standing rule that jurisdictional questions should be resolved before proceeding to the merits. *See Wausau*, 905 F.2d at 45; *Carlsberg*, 554 F.2d at 1257. Indeed, *Sterling*'s holding that the jurisdictional question may be deferred until trial is completely consistent with our holdings in *Wausau* and *Carlsberg*.

Rule 12(h)(3) requires that the district court dismiss an action *"[w]henever* it appears ... that the court lacks jurisdiction of the subject matter...." Fed.R.Civ.P. 12(h)(3) (emphasis added). When the defendants made the motion to dismiss for lack of subject matter jurisdiction in *Sterling*, there was no basis in the record for believing that any plaintiff would be unable to prove claims in excess of the jurisdictional minimum. Quite the contrary, it appeared that every plaintiff had a claim well in excess of the jurisdictional minimum. *Sterling*, 855 F.2d at 1195. The district court in *Sterling* decided that it was not required to dismiss plaintiffs who failed to allege claims in excess of the jurisdictional minimum when the court had no reason to doubt that any plaintiff would fail to prove a claim in excess of the amount required.

The plaintiffs whose pleading allegations were challenged in *Sterling* were plaintiffs either by virtue of the fact that they did not opt out of the class or had been permitted to join the representative plaintiff class under Rule 20(a). Counsel for the plaintiffs argued that it was unnecessary for the plaintiffs who joined the suit by failing to opt out to allege claims in excess of the jurisdictional minimum, since the original plaintiffs had already claimed jurisdictionally sufficient damages and the non-opt-out plaintiffs adopted the original plaintiff's *ad damnum* clause when they joined the suit.[5]

*Sterling* is a case about pleading rules.[6] No one in *Sterling* expressed serious doubt that any plaintiff, however he became part of the suit, would fail to demonstrate a claim in excess of the jurisdictional minimum. Indeed, plaintiff's counsel assured the court that each plaintiff had claims in excess of the minimum. *Sterling*, 855 F.2d at 1194–95.

In this case, by contrast, plaintiffs have not only failed to allege that every plaintiff has a claim in excess of the jurisdictional minimum, but plaintiff has admitted in its amended complaint that some plaintiffs do not meet the jurisdictional minimum. Furthermore, defendants have introduced uncontradicted evidence that as much as 60% of the plaintiff class cannot meet the jurisdictional requirement. Plaintiffs cannot invoke Rules 12(d) and 12(h)(3) to save their suit because Rule 12(h)(3) requires that the court dismiss the suit *"[w]henever* it appears ... that the court lacks jurisdiction of the subject matter...." Fed.R.Civ.P. 12(h)(3) (emphasis added). It appears that the district court lacks jurisdiction *now*.[7]

not whether any plaintiffs will have to be dismissed. If plaintiffs cannot amend their complaints to make jurisdictionally sufficient allegations, their cases should be dismissed entirely.

5. The case does not indicate how plaintiffs' counsel responded to the objection that the plaintiffs who joined the suit under Rule 20(a) failed to allege jurisdictionally sufficient damages.

6. To the extent that *Sterling* implies that it is ever permissible for a plaintiff's complaint to lack a jurisdictionally sufficient claim on its face, I disagree. It is the long standing rule that

jurisdiction must exist on the face of a complaint in accordance with Rule 8(a)(1). *Smith v. McCullough*, 270 U.S. 456, 46 S.Ct. 338, 70 L.Ed. 682 (1926).

7. The majority opinion has created a paper tiger by concluding that Rule 12(d) cannot be given effect unless we read Rule 12(h)(3) as conferring the power to dismiss for lack of subject matter jurisdiction on the court and Rule 12(d) states when that power may be exercised. The majority insists that any other reading of Rule 12(h)(3) would nullify the plain language of Rule 12(d). I disagree.

Accordingly, following the mandate of Rule 12(h)(3), *Carlsberg*, and even *Sterling*, the district court must require that the jurisdictional infirmities be cured *now*.

The majority's reliance on *Sterling* is also misplaced because 28 U.S.C.A. § 1332 does not contemplate dismissal for lack of jurisdiction where a plaintiff has failed to establish damages for less than the jurisdictional minimum after trial. If a prevailing plaintiff fails to establish damages meeting the minimum amount in controversy for diversity cases after trial, 28 U.S.C.A. § 1332(b) (1966 & Supp.1990) authorizes the district court to deny plaintiff his costs, or even to impose costs on the prevailing plaintiff. 28 U.S.C.A. § 1332(b).[8] If the majority were correct in its analysis of Rules 12(b)(1), 12(d), and 12(h)(3), and its conclusion that a district court may postpone resolution of jurisdictional questions until after trial, 28 U.S.C.A. § 1332(b) would make no sense. Under the majority's reading of these authorities, if a plaintiff were awarded damages for less than the jurisdictional minimum after trial, the district court would dismiss the case for lack of subject matter jurisdiction. But that view was soundly rejected by the Supreme Court in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938) (a case cannot be dismissed for lack of jurisdiction if it contains a jurisdictionally sufficient allegation, but the plaintiff recovers less than the jurisdictional minimum). Either the district court has jurisdiction and a plaintiff with an inadequate claim is subject to an assessment of costs or the court lacks jurisdiction and the case must be dismissed. Since section 1332(b) explains what course to take if a prevailing plaintiff proves an inadequate claim after trial, it makes no sense to hold that the plaintiff's claim can be dismissed at that stage for lack of subject matter jurisdiction. Because I believe the district court is proceeding beyond its jurisdictional sphere by going to the merits without either dismissing the case or, at least, the plaintiffs whose claims are insufficient, I would issue the writ of mandamus.

### B.

The majority has made much of the rule that a case will not be dismissed for lack of subject matter jurisdiction unless it appears to a "legal certainty" that the plaintiffs' claim is insufficient. In support of that proposition, the majority cites *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. at 289, 58 S.Ct. at 590. *Red Cab* involved a case which had been removed from state court to federal court. Jurisdiction was invoked under the diversity statute then in effect which required that the plaintiff have at least $3000 in dispute. In the original state action, the plaintiff demanded $4000 and other appropriate relief. *Id.* at 285, 58 S.Ct. at 588. After the case was removed to federal court, the plaintiff filed a second amended complaint which again alleged damages of $4000 resulting from an alleged breach of contract. Plaintiff had attached an appendix to the second amended complaint which listed specific amounts of damages resulting from the alleged breach of contract. The appendix, however, indicated damages of only $1,380.89. At trial the plaintiff prevailed, but the damage award was for only $1,162.98. *Id.* at 285, 58 S.Ct. at 588.

---

Professor Wright has explained when a jurisdictional challenge should be deferred. "If ... a decision of the jurisdictional issue requires a ruling on the merits of the case, the decision should await a determination of the merits...." 5A C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d* § 1350, at 235 (1990) (collecting cases); *Id.*, § 1373, at 552–54 ("because of its significance, a defense of lack of subject matter jurisdiction usually will receive a hearing, unless its resolution cannot be achieved without a consideration of the merits of the action.") (collecting cases). I think that Professor Wright's construction of Rules 12(d) and 12(h)(3) gives effect to both rules without the strained logic the majority opinion requires.

**8.** 28 U.S.C.A. § 1332(b) read in relevant part:

(b) Except where express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $10,000 ... the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff....

On appeal, the Court of Appeals refused to decide the case on the merits because the plaintiff had a jurisdictionally insufficient claim after trial. The Supreme Court reversed on the ground that a complaint need only contain a good faith allegation that there is a jurisdictionally sufficient claim. *Id.* at 288, 58 S.Ct. at 590 ("The rule governing dismissal for want of [subject matter] jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith."). In the case before us, plaintiffs have failed to plead jurisdictionally sufficient claims because, as they candidly admitted, they could not make such an allegation in good faith. *Red Cab* contains no authority for the proposition that the "legal certainty" test will save a pleading which is inadequate on its face. Rather, the rule of *Red Cab* is that a case will not be dismissed for lack of subject matter jurisdiction where a plaintiff at trial has proven damages which are less than the jurisdictional minimum, notwithstanding the fact that if the plaintiff had alleged only that insufficient amount in the original complaint, the court would have been compelled to dismiss for lack of subject matter jurisdiction. This rule is entirely consistent with the language of 28 U.S.C.A. § 1332(b), which imposes costs on a prevailing plaintiff who after trial has failed to recover a claim that would be jurisdictionally sufficient.

This Court's "legal certainty" test in *Nelson* is not to the contrary. *Nelson v. Keefer,* 451 F.2d 289 (3d Cir.1971). In *Nelson,* three plaintiffs sued in federal court to recover for personal injuries they sustained in an automobile accident allegedly caused by defendant's negligence. Jurisdiction was invoked on the basis of diversity of citizenship. Although the plaintiffs' complaint apparently had jurisdictionally sufficient claims in its *ad damnum* clause, we looked to the facts averred in support of the complaint and concluded that the trial court had not erred in dismissing the case for lack of subject matter jurisdiction. We agreed that the plaintiffs had failed to allege facts that could conceivably support even a single claim for $10,000. As a result, we concluded that defendants had shown to a "legal certainty" that plaintiffs' claims were insufficient. We therefore affirmed the dismissal for lack of subject matter jurisdiction.

Our holding in *Nelson* is entirely consistent with the rule that, *at a minimum,* plaintiffs must have allegations that are jurisdictionally sufficient. Indeed, in *Nelson,* we held that a jurisdictionally sufficient allegation was not enough—the plaintiff must also allege facts that at some level support a claim that is jurisdictionally sufficient. That is why we affirmed the dismissal in *Nelson.* It bears repeating: plaintiffs concede in their amended complaint that they lack jurisdictionally sufficient claims. We have no choice but to dismiss the actions or, at least, to require that plaintiffs file complaints which comply with 28 U.S.C.A. § 1332. The majority's conclusion today that dismissal is not required has no basis in any decision of any federal court at any time.

Moreover, even if I were willing to yield to the majority's distortion of the "legal certainty" test, I would conclude that petitioners have met their burden of proving to a legal certainty that plaintiffs claims are jurisdictionally insufficient. First, plaintiffs admit exactly that in the amended complaint. Second, petitioners have introduced unrefuted evidence that as much as 60% of the plaintiff class has a claim for less than the jurisdictional minimum. At oral argument, plaintiffs repeatedly stressed that there were at least 16,000 members of the class who had claims in excess of the jurisdictional minimum. This class contains over 35,000 plaintiffs. It remains the law that, "[e]ach plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case—'one plaintiff may not ride in on another's coattails.'" *Zahn,* 414 U.S. at 301, 94 S.Ct. at 512 (quoting *Zahn v. International Paper Co.,* 469 F.2d 1033, 1035 (2d Cir.1972)). *See also Snyder,* 394 U.S. 332, 89 S.Ct. 1053 (separate claims in a class action suit could not be aggregated for the

purpose of meeting the jurisdictional minimum amount in controversy requirement). That leaves over 17,000 claims of plaintiffs for which the court lacks jurisdiction. The majority's conclusion that the defendants have failed to show that the plaintiffs' claims are jurisdictionally insufficient to a "legal certainty" is incredible in light of (1) plaintiffs' admission in their amended complaint and (2) defendants' uncontradicted evidence that 60% of the plaintiff class have damages less than the jurisdictional minimum.

The majority claims that "[p]ostponing dismissal of such plaintiffs not only appears prudent, but it meshes with our policy [of dismissing only those 'flagrant' cases where it can be determined in advance 'with legal certainty' that the jurisdictional minimum is not satisfied]." Maj. typescript op. at 1316 (citation omitted). But, there is no reason in this litigation to relax the rule in *Zahn*, even if we had that power. Indeed, policy considerations, even if they were relevant in jurisdictional matters, suggest that the rule in *Zahn* should be vigorously applied.

In the event that defendants prevail after a trial on the merits, individual plaintiffs could avoid the preclusive effect of an adverse decision with respect to the common questions of law and fact by proving that they never had a claim in excess of $10,000. It is even possible that plaintiffs whose claims do exceed $10,000 could attack an adverse decision collaterally by later alleging that the class was defective

because so many members lacked claims for more than $10,000 that the class action should have been dismissed. For all these reasons, I believe that we have a constitutional duty to grant the mandamus relief petitioners have requested.

## II.

The district court refused to dismiss the present case although it was discovered that the plaintiff class included plaintiffs who were not diverse from all defendants. The district court ruled that "if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse parties are named parties, federal jurisdiction is proper. *See Snyder v. Harris*, 394 U.S. 332, 340, 89 S.Ct. 1053, 1059, 22 L.Ed.2d 319 (1969); *see also In re Agent Orange Products Liability Litigation*, 818 F.2d 145, 162 (2d Cir.1987)." Memorandum and Order at 5-6, filed with Pretrial Order No. 197 in *In re School Asbestos Litig.*, No. 83-0268, 1989 WL 138835 (E.D.Pa., filed Nov. 15, 1989). Recently, Justice O'Connor expressed the same view in her dissent in *Carden v. Arkoma Assocs.*, —— U.S. ——, 110 S.Ct. 1015, 1023, 108 L.Ed.2d 157 (1990) (O'Connor, J., dissenting).

The authority cited by the district court supports its conclusion that complete diversity is not jurisdictionally required. Notwithstanding Justice O'Connor's dissent in *Carden* (which was not a suit involving class actions), recent decisions of the Supreme Court undermine that conclusion.[9]

---

**9.** I dismiss as incorrect the majority's contention that it need not reach defendant's claim of pendent-party jurisdiction because its decision is that diversity jurisdiction exists under section 1332(a) for these class action suits. *See* maj. op. at 1314-1315. It is beyond dispute that there is no subject matter jurisdiction in diversity cases where there is incomplete diversity between plaintiffs and defendants. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Since I doubt that the majority would attempt to overrule the Supreme Court on this or any other point, I must construe the majority's statement that the exercise of jurisdiction over non-diverse class action plaintiffs is permissible under section 1332(a) as a statement that the non-diverse class action plaintiffs fall within the court's pendent-party jurisdiction. *See, e.g., Finley v. U.S.*, 109 S.Ct. at 2006 (pendent-party jurisdiction is

"jurisdiction over parties not named in any claim that is independently cognizable by the federal court"). In other words, the exercise of jurisdiction over parties where the court otherwise lacks subject matter jurisdiction *is* pendent-party jurisdiction—to say that a federal court can exercise jurisdiction over non-diverse parties in a Rule 23(b)(3) class action is to say that the federal court has pendent-party jurisdiction over the non-diverse plaintiffs.

As it stands, the majority seems to suggest that there is a special kind of jurisdiction known as class action jurisdiction which amounts to an exception to the rule requiring complete diversity where jurisdiction is based on diversity of citizenship. This suggestion implies that Rule 23 somehow enlarges the jurisdiction of federal courts in diversity cases. "[I]t is axiomatic, [however,] that the Federal Rules

In order for an inferior court to have jurisdiction over any matter, it must have both constitutional and statutory authority. *See Finley v. U.S.*, 490 U.S. 545, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989) ("It remains rudimentary law that '[a]s regards all courts of the United States inferior to this tribunal, two things are necessary to create jurisdiction, whether original or appellate. The Constitution must have given to the court the capacity to take it, *and an act of Congress must have supplied it....* To the extent that such action is not taken, the power lies dormant.' " (quoting *The Mayor v. Cooper*, 6 Wall. 247, 252, 18 L.Ed. 851 (1868)).

To determine whether jurisdiction exists in any case, the court must first ascertain whether it has a constitutional grant of power over the subject matter. The Constitution extends the judicial power to "all Cases ... arising under this Constitution, the Laws of the United States ... [and] to Controversies ... between Citizens of different States ..." U.S. Const. art. III, § 2. The case before us now concerns the power of a federal court to exercise jurisdiction in a diversity suit over parties over whom there is no independent basis for jurisdiction (because of a lack of complete diversity).

*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) is the seminal case on the scope of the constitutional grant of jurisdictional power. *Gibbs* concerned the power of a federal court to retain jurisdiction of a state law claim after it dismissed the federal claim on which federal jurisdiction had been based. As such, *Gibbs* is properly classified as a case about pendent-claim jurisdiction (the power of a federal court to hear claims for which there is no independent basis for federal jurisdiction), while the case we have before us is pendent-party jurisdiction (the power of a federal court to hear actions concerning parties for whom there is no independent basis for jurisdiction).

*Gibbs* set forth a broad reading of the constitutional grant of jurisdictional power.

Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *,' U.S. Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'

*Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138 (footnote omitted). The relationship between the state and federal claim permit the conclusion that they comprise one constitutional case when they "derive from a common nucleus of operative fact." *Id.* The test for whether the two claims derive from a "common nucleus of operative fact," is "if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." *Id.* (footnote omitted).

Although it is by no means an easy question, I am willing to assume that all claims at stake in this class action derive from a common nucleus of operative fact such that there is before us one constitutional case. Accordingly, I agree that we have constitutional power to hear this case. Constitutional power, however, is not enough.

The next step is to determine how much of this constitutional grant of power has been congressionally authorized in 28 U.S.C.A. § 1332(a). *See Finley*, 109 S.Ct. at 2007 ("Our cases show ... that with respect to the addition of parties, as opposed to the addition of only claims, we will not assume that the full constitutional power has been congressionally authorized, and

---

of Civil Procedure do not create or withdraw federal jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370, 98 S.Ct. 2396, 2400, 57 L.Ed.2d 274 (1978). *See also* Fed.R. Civ.P. 82. Again, I can only presume that the

majority opinion rests on the conclusion that 28 U.S.C. § 1332(a) contains a statutory grant of power for federal courts to exercise pendent-party jurisdiction.

will not read jurisdictional statutes broadly.") From as early as the Judiciary Act of 1789, in which Congress first authorized federal courts to exercise diversity jurisdiction, the Supreme Court has interpreted the legislative grant of jurisdictional power to hear diversity suits to require "complete diversity" of citizenship. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). *See also Carden,* 110 S.Ct. at 1017 (1990).

Following the doctrine requiring complete diversity, the Supreme Court has refused to read 28 U.S.C.A. § 1332(a) as granting federal courts power to exercise pendent-party jurisdiction in diversity cases. In *Zahn v. International Paper, supra,* the Court refused to allow class action plaintiffs to aggregate their claims to satisfy the jurisdictional minimum amount in controversy, notwithstanding the fact that all the claims together amounted to a single constitutional case under *Gibbs. See Finley,* 109 S.Ct. at 2007. Professor Moore has written, based on the reasoning of *Zahn,* "the citizenship of each member of the class must be considered." 1990 *Moore's Federal Practice Rules Pamphlet,* ¶ 23.18 at 253. In *Kroger,* 437 U.S. 365, 98 S.Ct. 2396, another diversity case, the Court refused to permit the plaintiff to assert a claim directly against a non-diverse third party, although the Court recognized that the controversy involved one constitutional case under the *Gibbs* test. Thus, the Supreme Court has not read 28 U.S.C.A. § 1332(a) to confer the power on federal courts to exercise jurisdiction over parties for whom there is no independent basis for jurisdiction in diversity cases.

The only time that the Supreme Court has ever exercised anything that even looks like pendent-party jurisdiction in a class action diversity suit was in 1921. In *Supreme Tribe of Ben–Hur v. Cauble,* 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921), the Court held that unnamed plaintiff members of a class action suit who had lost their suit in federal court were precluded from suing again in state court based on the same underlying claim. The class action plaintiffs argued that they were not bound by the decision in the first case because joinder of them in the first case would have destroyed complete diversity in the federal class action. The Court held that the plaintiffs were barred from suing again because they were properly represented in the first suit. *Id.* at 367, 41 S.Ct. at 342.

*Ben–Hur* has been characterized by the Supreme Court as an example of "ancillary jurisdiction," which the Court then described as a doctrine "bottomed on the notion that since federal jurisdiction in the principal suit effectively controls the property or fund under dispute, other claimants thereto should be allowed to intervene in order to protect their interests, without regard to jurisdiction." *Aldinger v. Howard,* 427 U.S. 1, 11, 96 S.Ct. 2413, 2419, 49 L.Ed.2d 276 (1976). Under the modern class action rules, *Ben–Hur* would be a Rule 23(b)(1) class action, since the dispute involved indivisible claims of class members to a common fund. Accordingly, the reasons for the decision in *Ben–Hur* are not controlling here.

The Supreme Court on two occasions has dealt with the question whether a federal court could exercise pendent-party jurisdiction over parties for whom there was no independent basis for jurisdiction in class action diversity suits. The first was in *Snyder,* 394 U.S. 332, 89 S.Ct. 1053. In *Snyder,* the Court stated in *dicta,* "Under current doctrine, if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant and have nothing to fear from trying the lawsuit in the courts of their own State." *Id.* at 340, 89 S.Ct. at 1059 (citing *Ben–Hur,* 255 U.S. 356, 41 S.Ct. 338). *Snyder* is not, however, controlling on this issue, since the controversy in that case concerned the power of a federal court to exercise pendent-party jurisdiction over class action plaintiffs whose claims were for less than the jurisdictional minimum amount in controversy. In *Snyder,* the Court held that there was no sub-

ject matter jurisdiction and dismissed the case. There was no question presented there about the power of the Court to exercise jurisdiction over the claims of non-diverse class action plaintiffs. As a result, although we must respect reasoned *dicta* of the Supreme Court, *see, e.g., Nichol v. Pullman Standard, Inc.,* 889 F.2d 115, 120, n. 8 (7th Cir.1989), we are not bound to follow the *Snyder* Court's conclusion since that was not the issue addressed. *See also In re Permian Basin Area Rate Cases,* 390 U.S. 747, 775, 88 S.Ct. 1344, 1364, 20 L.Ed.2d 312 (1968) ("this Court does not decide important questions of law by cursory dicta inserted in unrelated cases").

The second instance where the Supreme Court mentioned the question whether a federal court could exercise pendent-party jurisdiction over parties for whom there was no independent basis for jurisdiction was in Justice O'Connor's dissent in *Carden,* 110 S.Ct. at 1023. Unlike *Snyder, Carden* was not even a case about class actions. The dispute in *Carden* was whether, in a suit brought by a limited partnership, the citizenship of the limited partners must be considered in determining diversity of citizenship among the parties. *Carden,* 110 S.Ct. at 1016. The majority answered in the affirmative, the dissent disagreed. There was no discussion in *Carden* about pendent-party jurisdiction— everyone agreed that there had to be complete diversity between all plaintiffs and all defendants. The inquiry was whether citizenship of the limited partners mattered for the purpose of determining the citizenship of the artificial entity known as the limited partnership. There was no question before the Supreme Court about the need for an independent basis of jurisdiction for every plaintiff in court. The only question was whether partnerships should be treated like corporations for the purpose of determining citizenship. Accordingly, even if the dissent had been the majority opinion in *Carden,* we would not be bound by the statement that only the citizenship of the named plaintiffs matter in Rule 23 class actions. We are, of course, not bound by a dissent to a Supreme Court opinion.

Recently, another Court of Appeals addressed a similar issue to the one before this Court. In *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 161–62 (2d Cir. 1987), the court held that under long-standing Supreme Court doctrine, "complete diversity is required only between the named plaintiffs and the named defendants in a federal class action." *Id.* at 162. While I recognize that *In re Agent Orange* directly supports plaintiffs' jurisdictional theory, I believe that its vitality has been totally undermined by the Supreme Court's decision in *Finley.*

*Finley* reminds us that federal courts must have both a constitutional and statutory basis for exercising jurisdiction. While we might assume under *Gibbs* that the district court had the constitutional power to hear the case, the same is by no means true of the statutory power authorized by 28 U.S.C.A. § 1332(a). The question boils down to whether section 1332(a) can be read as containing an authorization by Congress for federal courts to exercise jurisdiction over parties over whom there is no independent basis of jurisdiction, *i.e.,* where complete diversity is lacking. I do not believe it can.

In case after case, the Supreme Court has refused to allow federal courts to exercise pendent-party jurisdiction over parties for whom there was no independent basis for federal jurisdiction in diversity cases. *See, e.g., Kroger; Zahn; Snyder;* and *Strawbridge v. Curtiss.* In light of Supreme Court precedent that has consistently refused to read 28 U.S.C.A. § 1332(a) as containing an authorization for federal courts to exercise pendent-party jurisdiction over parties where complete diversity is lacking, I conclude that the district court must dismiss these cases for lack of subject matter jurisdiction.

## III.

These three class actions should have been dismissed by the district court for lack of subject matter jurisdiction. Defendants have introduced unrefuted evidence that as much as 60% of plaintiff class cannot meet the jurisdictional minimum

amount in controversy required by 28 U.S.C.A. § 1332(a). Plaintiffs have even conceded this in the complaint. Inasmuch as the Supreme Court has long held that every plaintiff with a distinct claim must meet the jurisdictional minimum requirement even in class action suits, the case should be dismissed. Nor am I persuaded by the majority's articulation of a "legal certainty" test that defendants have failed to meet. Even the most stringent (and distorted) version of this test which would waive the requirement that the plaintiff plead facts which support an allegation that the federal court has jurisdiction over the subject matter shows to a "legal certainty" that the majority of plaintiffs represented in this class action have claims for less than the jurisdictional minimum.

In addition to the fact that the district court lacks subject matter jurisdiction because of jurisdictionally insufficient claims, this class action also violates the requirement that there be "complete diversity" between all plaintiffs and all defendants. Because complete diversity is lacking between members of the plaintiff class and named defendants, the case should have been dismissed for lack of subject matter jurisdiction.

I would grant the writ of mandamus defendants have requested.