## SMITH *v.* McCULLOUGH ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 22. Argued October 8, 1925.—Decided March 22, 1926.

1. Whatever is essential to federal jurisdiction must be alleged in the complaint; otherwise the suit must be dismissed, unless the defect in the complaint be cured by amendment. P. 459.
2. Where the jurisdiction depended on the existence of a dispute over the construction of federal statutes, which was not properly shown in the bill, but which was the principal controversy in several trials in which jurisdiction was assumed to exist by the courts and both parties, and this appeared by the record—*held* that the defect was amendable and would be treated as amended in this Court. P. 459.

3. A judgment of the Circuit Court of Appeals reversing the District Court and remanding the case for further proceedings is interlocutory, and a party against whom it was rendered and who did not acquiesce in it is not precluded by it from reopening the questions so decided when the case is again appealed after a second trial. P. 461.

4. Where a Quapaw Indian, whose general power to alienate or lease his allotment was restricted by Acts of Congress applying generally to his tribe, was permitted by a special Act to alienate, subject to the supervision and approval of the Secretary of the Interior, and made a mortgage, with such approval, and subsequently received a release and reconveyance—*held* that the transaction did not rid him of the restrictions on the land, and that the validity of a lease he afterwards made, without the Secretary's approval, was governed by the Acts first mentioned. P. 462.

5. A Quapaw Indian, permitted by the Act of June 7, 1897, to lease his allotment for mining purposes for ten years, made a lease for that term with an added provision that the term continue thereafter so long as minerals could be produced with profit. *Held* that the lease could not be sustained upon the ground that the addition was severable from the lawful term. P. 463.

6. Where the allotee undertakes to negotiate a lease for a forbidden term, he enters a field in which he must be regarded as without authority or capacity, and the resulting lease is void. P. 465.

285 Fed. 698, reversed.

APPEAL from a decree of the Circuit Court of Appeals affirming a decree of the District Court which, in a suit to determine adverse claims based on conflicting mining leases given by a Quapaw Indian, upheld the plaintiff's lease and cancelled the defendants' leases to the extent of the conflict. See also 243 Fed. 823.

*Mr. Arthur S. Thompson* for appellant.

*Mr. Joseph C. Stone*, with whom *Messrs. A. C. Towne, George J. Grayston, C. M. Grayston, Paul A. Ewert, James Davenport, W. M. Jackson*, and *W. R. King* were on the briefs, for appellees.

Mr. Justice Van Devanter delivered the opinion of the Court.

This appeal brings under review the proceedings in a much-litigated suit in equity brought to determine adverse claims based on conflicting mining leases given by a Quapaw Indian of land which was part of his allotment. The plaintiffs (appellees here) claimed under the first lease, and the defendant (appellant here) under two later leases, which taken together included the same land as the first. The relief sought by the plaintiffs was full recognition of their lease and cancelation of the others. On the original hearing the District Court, following its decisions in earlier cases, held that the plaintiffs' lease contravened restrictions imposed by laws of Congress, in that it was for a longer term than ten years, and therefore was void. Accordingly the bill was dismissed; but the Circuit Court of Appeals disapproved that ruling, reversed the decree and remanded the cause for further proceedings, 243 Fed. 823. On a subsequent hearing the District Court recognized the plaintiffs' lease as valid for a term of ten years and canceled the defendant's leases to the extent of the conflict. The Circuit Court of Appeals affirmed that decision, 285 Fed. 698; and the present appeal is from the decree of affirmance.

The plaintiffs insist that this appeal cannot be entertained, although taken prior to the Act of February 13, 1925, c. 229, 43 Stat. 936, changing federal appellate jurisdiction. But we think they misapprehend the situation.

The suit was not within any of the classes as to which an appeal was denied by § 128 of the Judicial Code, as existing before the change. Either the suit was one arising under the laws of Congress relating to the alienation and leasing of Quapaw allotments, or there was an entire absence of federal jurisdiction. In either event § 241 of

the Judicial Code, as existing before the change, permitted an appeal to this Court from the final decree of the Circuit Court of Appeals. The only difference was that if the suit was one arising under the laws of Congress relating to the alienation and leasing of such allotments the reëxamination by this Court would extend to the merits; while if there was an absence of federal jurisdiction this Court could not consider the merits, but would have to reverse the decrees of both courts below and remand the cause to the District Court with a direction to dismiss the bill for want of jurisdiction. *Shoshone Mining Co.* v. *Rutter,* 177 U. S. 505, 514; *Western Union Telegraph Co.* v. *Ann Arbor R. R. Co.,* 178 U. S. 239, 244. The Act of 1925 expressly left all appeals which were then pending in this Court to be disposed of under the old law.

It therefore is necessary at the outset to determine whether this suit was one arising under the legislation relating to Quapaw allotments or was one where there was an absence of federal jurisdiction. The established rule is that a plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction; and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment. *Norton* v. *Larney,* 266 U. S. 511.

Here the bill disclosed that the lease under which the plaintiffs were claiming, and which they sought to have recognized, was based on the laws of Congress relating to the right of Quapaw allottees to alienate and lease their lands, and that the defendant was claiming adversely under later leases from the same lessor. It apparently was intended to show that the suit was one arising under those laws; but it fell short of showing that a real dispute over their construction and application was involved.

See *Schulthis* v. *McDougal*, 225 U. S. 561, 569; *Barnett* v. *Kunkel*, 264 U. S. 16, 19–20. In fact, as appears elsewhere in the record, that was the principal matter in dispute, and the outcome depended on its solution. The defendant's first step in the suit was to challenge the plaintiffs' right to relief by a motion to dismiss on the ground that under those laws, rightly construed and applied, the plaintiffs' lease was invalid. That challenge was sustained by the District Court, but was overruled by the Circuit Court of Appeals on the first appeal. A simple amendment of the bill, conforming its jurisdictional allegations to the fact thus brought into the record, would have corrected the defect and put in affirmative and definite form what apparently was intended in the beginning. Had the defect been called to the court's attention, leave to make the amendment could and doubtless would have been granted. Both parties proceeded as if the jurisdictional showing was sufficient; and both courts below dealt with the suit as one arising under the laws before named and proceeded to its determination accordingly. The suit was begun in 1916; the parties had two hearings in each of the courts below; and the merits were exhaustively presented. In these circumstances to amend the bill now to conform to the jurisdictional fact indisputably shown elsewhere in the record will not subject either party to any prejudice or disadvantage, but will subserve the real interests of both. This Court has power to allow amendments of this character. Rev. Stat. § 954; *Norton* v. *Larney, supra; Realty Holding Co.* v. *Donaldson,* 268 U. S. 398, and the propriety of exercising it in this instance is obvious. We therefore shall treat the bill as amended, by our leave, to show the jurisdictional fact conformably to other parts of the record. With that fact brought into the bill, there can be no doubt that there was federal jurisdiction. *Hopkins* v. *Walker,* 244 U. S. 486; *Norton* v. *Larney, supra.*

The plaintiffs insist that, as the defendant did not appeal from the decree of the Circuit Court of Appeals on the first appeal, he is now precluded from questioning what was decided then. But the law and settled practice are otherwise. That decree was not final but only interlocutory, and so was not appealable. Nor did the defendant acquiesce in it. On the contrary, he sought to have it reconsidered by the Circuit Court of Appeals on a timely petition for rehearing, and again on the second appeal to that court. He therefore is entitled to ask, as he does in his assignments of error, that it be reëxamined on this appeal. *United States* v. *Beatty,* 232 U. S. 463, 466; *Hamilton-Brown Shoe Co.* v. *Wolf Brothers & Co.,* 240 U. S. 251, 258.

We come then to the merits, which center about the validity of the plaintiffs' lease.

The lessor was a Quapaw Indian and under the guardianship of the United States. The land for which the conflicting mining leases were given was part of the allotment made to him in the distribution of the lands of his tribe. His title rested on a patent issued to him in 1896 pursuant to the Act of March 2, 1895, c. 188, 28 Stat. 907, which provided that the allotments should be inalienable for a period of 25 years from the date of the patents. The Act of June 7, 1897, c. 3, 30 Stat. 72, modified that restriction to the extent of authorizing the allottees " to lease their lands, or any part thereof, for a term not exceeding three years for farming of grazing purposes, or ten years for mining or business purposes "; and the Act of June 21, 1906, c. 3504, 34 Stat. 344, further modified the restriction to the extent of specially authorizing this allottee to alienate not exceeding 120 acres of his allotment, subject to the supervision and approval of the Secretary of the Interior.

On July 14, 1906, the allottee, with the approval of the Secretary of the Interior, conveyed 120 acres of his allot-

ment to E. V. Kellett by a deed which described itself as a "mortgage" and contained a declaration that it was made to secure the payment of a promissory note given to Kellett by the allottee and was to be null and void if the note was duly paid. In due course the note was paid, and on June 20, 1908, the land was reconveyed to the allottee by a deed which described itself as a "release of mortgage" and contained an acknowledgment of such payment.

The 120 acres thus conveyed to Kellett and reconveyed to the allottee is the land for which the allottee gave the mining leases in question here. They were given in 1912 and 1913, but were not approved by the Secretary of the Interior. The plaintiffs' lease was for a term exceeding ten years, while the defendant's leases were limited to a ten-year term.

The evidence at the final hearing took a wide range, but in no wise tended to show either that the defendant was precluded from assailing the plaintiffs' lease or that the plaintiffs were entitled to any equitable relief if their lease was originally invalid. The defendant took his leases with notice of the plaintiffs' lease, but had been proceeding with operations under his for a year or two before any effort was made to take possession or begin operations under the plaintiffs'.

The first question on the merits is, whether the Act of 1906 and the conveyance made to Kellett with the approval of the Secretary of the Interior took the land entirely out of the prior restrictions on its alienation, so that when that conveyance had served its purpose and the reconveyance to the allottee was made he was free to lease the land, and even to sell it, as he saw fit. The plaintiffs contend that the answer should be in the affirmative. Both courts below held the other way, and we think they were right. The Act of 1906 did not accord to the allottee an unqualified right of alienation,

but a right which was to be exercised only under the supervision and with the approval of the Secretary of the Interior. Nor was the conveyance to Kellett an absolute alienation. In terms and effect it was a conditional conveyance, called a mortgage, and the contingency which might have converted it into an absolute alienation never happened. The Secretary's approval was of that particular conveyance and of course was measured by its terms and purpose. When the condition on which the conveyance was to be null and void was performed and the reconveyance was made the situation was essentially the same as if there had been no conveyance. In substance a lien had been created with the Secretary's approval and then extinguished, thus leaving the land subject to the restrictions.

This brings us to the defendant's contention that the plaintiffs' lease was void because given for a term exceeding ten years. We have seen that the District Court originally so held, in keeping with its decisions in prior cases, and that the Circuit Court of Appeals, while regarding the lease as given for a term exceeding ten years, held it good for that period and invalid as to the excess. To determine this conflict involves a consideration of the purpose and effect of the restrictive provisions in the Acts of 1895 and 1897 and an examination of the terms of the lease.

The Act of 1895 declared broadly that the allotments should be inalienable for 25 years from the date of the patents, and the Act of 1897 relaxed that restriction to the extent only of permitting the allottees to lease not exceeding a term of three years for farming or grazing purposes, or ten years for mining or business purposes. Thus it was beyond the power of any allottee, on his own volition, to grant any interest in his allotment during the 25-year period otherwise than by a lease permitted

by the Act of 1897. *United States* v. *Noble*, 237 U. S. 74, 80. The plaintiffs' lease—it originally ran to one Hopper and was assigned by him to them—was given during that period and was for mining purposes. The consideration recited was one dollar in hand paid and the lessee's covenants to begin operations within 90 days or pay a stated rent, to conduct the operations with diligence and to pay royalties of five per cent. of the market value of the minerals removed. The term of the lease was stated to be " ten years " from its date, but with the qualification that, if minerals were found in paying quantities, " the privilege of operating " under the agreed terms should " continue so long as " minerals could be produced in such quantities after the expiration of the ten years, and that, if operations were not begun within 90 days, the lessee should pay, in lieu of such work, five cents an acre yearly for each, acre in the lease " so long as ". he desired " to operate and hold the same." The parties rightly agree, as the courts below did, that these provisions, if taken together, show that the lease was not limited to a term of ten years but was to continue after that period so long as minerals could be produced with profit.

The Circuit Court of Appeals concluded that the provisions just described were so far independent and severable that the one declaring that the term was to be ten years should be given effect and those declaring that it was to continue beyond that period should be rejected as invalid, and the lease sustained for a ten-year term. We think that conclusion overlooks the nature and purpose of the restrictions in the Acts of 1895 and 1897. In adopting the restrictions Congress was not imposing restraints on a class of persons who were *sui juris,* but on Indians who were being conducted from a state of dependent wardship to one of full emancipation and needed to be safeguarded against their own improvidence during the period of transition. The purpose of the restrictions

was to give the needed protection, and they should be construed in keeping with that purpose. The permission to give short leases was in the nature of an exception to the comprehensive restraint already imposed and hardly could have been intended to give any effect or recognition to leases negotiated and made in disregard of that limited permission. A lease not within that permission evidently was intended to be left where it was before—within the general prohibition and invalid. Otherwise the allottees would be exposed to much of the evil intended to be excluded; for of course many intending lessees would be disposed to obtain leases for long terms if no other risk was run than that of having their rights held down to the maximum admissible term, if the allottee or the United States should discover the situation and take proceedings to correct it. Such a view would almost certainly result in beclouding the title of the allottees and in bringing the land into needless litigation to their detriment. We think the better view is that where an allottee undertakes to negotiate a lease for a forbidden term he enters a field in which he must be regarded as without capacity or authority to negotiate or act and that the resulting lease is void. See *Taylor* v. *Parker*, 235 U. S. 42; *Sage* v. *Hampe*, 235 U. S. 99, 105.

This conclusion makes it unnecessary to consider other objections urged against the plaintiffs' lease. It follows that the first decree of the District Court was right and the subsequent decrees were wrong.

*Decree reversed.*