**Edmond A. TIRYAK**

v.

**Thomas P. JORDAN et al.**

Civ. A. No. 78–3816.

United States District Court,
E. D. Pennsylvania.

June 26, 1979.

Don Bronstein, Philadelphia, Pa., for plaintiff.

Joseph C. Vignola, Mitchell S. Lipschutz, Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

### I.

Plaintiff in this civil rights suit alleges that on Election Day, November 7, 1978, defendants acted in concert to evict him violently from a Philadelphia polling place. His complaint pleads federal claims under Sections 1983 and 1985(3) of Title 42 of the United States Code for violation of constitutional and statutory rights and pendent state claims under Pennsylvania law for various torts. Defendant Scardizzio has moved to dismiss under Rule 12 of the Federal Rules of Civil Procedure.

In an April 4, 1979 order, I raised *mea sponte* the question of subject matter jurisdiction. Specifically, the parties were asked to brief: (a) whether state action sufficient for § 1983 jurisdiction was alleged, and (b) whether discrimination suffi-

cient for § 1985(3) jurisdiction under *Carchman v. The Korman Corp.*, 594 F.2d 354 (3d Cir. 1979) was alleged. A hearing was held on June 1, 1979. For the reasons discussed below, I conclude that this suit is properly before me under § 1983.[1]

## II.

Plaintiff alleges that he is an attorney who, on Election Day, November 7, 1978, was serving as counsel to the Consumer Party and the Stop Rizzo Coalition.[2] The Consumer Party is a political party which in the election held on that day had candidates on the ballot for the offices of Governor and Lt. Governor of the Commonwealth of Pennsylvania and for the State Legislature. The Stop Rizzo Coalition was a group of organizations and individuals organized to work to defeat the proposed change in the Philadelphia Charter that would have allowed Mayor Rizzo to seek a third term in office.

Plaintiff's assignment as counsel to these two groups on Election Day was to serve on a ward patrol in the Thirty-third Ward in the Kensington section of Philadelphia. It was plaintiff's responsibility to visit all twenty-five divisions in the Thirty-third Ward to check for election irregularities and to confer with Consumer Party poll-watchers.

The complaint alleges that at approximately 10:30 A. M. on November 7, 1978 at the Twelfth Division polling place in the Thirty-third Ward, located at 1000 E. Luzerne Street, Philadelphia, plaintiff was unjustifiably threatened by defendant Jordan with forceable removal from the polling place. Plaintiff left the Twelfth Division polling place and reported to the Stop Rizzo Coalition that there were violations, threats and harassment at 1000 E. Luzerne Street and suggested that the District Attorney's Office be notified. Stop Rizzo Coalition headquarters then informed the District At-

torney of plaintiff's report and an assistant district attorney was sent to the Twelfth Division.

Plaintiff returned to 1000 E. Luzerne Street at approximately 3:00 P.M. He alleges that upon entering the polling place, defendant Jordan grabbed and dragged him outside the entrance. "Defendant Scardizzio then grabbed plaintiff with a headlock and pushed his fingers in plaintiff's face, grabbing the vicinity of his eye. Still holding plaintiff, defendant Scardizzio then took two full swings at plaintiff. With the second swing, defendant Scardizzio struck plaintiff in the back of his head with his fist." See complaint ¶ 11.

During and after this attack, defendants allegedly told plaintiff that he and his "people" should not return to that polling place. Fearing further harm, plaintiff left the area and did not return.

The complaint alleges that defendant Jordan was an officially certified Democratic Party poll-watcher for the Thirty-third Ward, Twelfth Division on November 7, 1978. Defendant Scardizzio, in his answers to plaintiff's complaint and interrogatories, admitted that he also was on November 7, 1978 an officially certified Democratic Party poll-watcher.[3] Plaintiff contends that defendants' participation as official poll-watchers in the November 7, 1978 election constitutes state action sufficient to establish that each acted under color of state law within the meaning of 42 U.S.C. § 1983.

## III.

The electoral process in Pennsylvania is entirely governed and regulated by statute. 25 P.S. § 2601 *et seq.* Although the state is ultimately responsible for the conduct and organization of elections, the statutory scheme in certain instances delegates aspects of that responsibility to the political

---

**1.** Because I find § 1983 jurisdiction, the question whether a § 1985(3) cause of action is also stated need not be decided now.

**2.** For purposes of this motion to dismiss I must of course take plaintiff's allegations as true.

**3.** See note 5 *infra* for the implications of plaintiff's failure to plead in his complaint that defendant Scardizzio was a poll-watcher.

parties. This delegation is a legislative recognition of "the critical role played by political parties in the process of selecting and electing candidates for state and national office." *Marchioro v. Chaney*, —— U.S. ——, ——, 99 S.Ct. 2243, 2246, 60 L.Ed.2d 816 (1979).

Relevant here are the provisions of the Election Code concerning poll-watchers. 25 P.S. § 2687. Section 2687 creates the position of poll-watcher and entrusts to the political parties responsibility for that post. The number of poll-watchers allowed, the manner of their appointment, their location within the polling place, the activities permitted and the amount of compensation allowed are all dictated by the statute.

Poll-watchers, like other voters, are "entitled to challenge any person making application to vote and to require proof of his qualifications." Unlike other voters, however, poll-watchers are "permitted to keep a list of voters" and, more important, are authorized to remain at the polling place for the entire Election Day, rather than the time necessary to vote only. This authority to remain at the polling place and thereby challenge numerous voters is granted the poll-watcher by the Election Code and proven by possession of an official certificate from the County Board of Elections, stating the poll-watcher's name and the name of the candidate, party or political body he represents.

■ The poll-watcher performs a dual function on Election Day. On the one hand, because he is designated and paid by a political party, his job is to guard the interests of that party's candidates. On the other hand, because exercise of his authority promotes an honest election, the poll-watcher's function is to guard the integrity of the vote. Protecting the purity of the electoral process is a state responsibility and the poll-watcher's statutory role in providing that protection involves him in a public activity, regardless of his private political motive.

The Supreme Court has long and consistently held that private individuals engage in state action when performing a public function, even if such is not their exclusive intent. *See e.g., Smith v. Allwright*, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944); *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); *Terry v. Adams*, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953). No activity is more indelibly a public function than the holding of a political election: "While the Constitution protects private rights of association and advocacy with regard to the election of public officials, [Supreme Court] cases make it clear that the conduct of the elections themselves is an *exclusively* public function." *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 158, 98 S.Ct. 1729, 1734, 56 L.Ed.2d 185 (1978).[4] It matters not that the political party, its officials and workers are acting in furtherance of private interests; if their conduct is made possible by state election law, and if one sequela of their conduct is to further the purity of an exclusive state concern, *i. e.*, elections, then their actions are for § 1983 purposes properly attributable to the state.

■ The acts alleged in the complaint specifically relate to defendants' statutory authority as poll-watchers. Defendants were engaged in their official role of examining voter qualifications and monitoring activities at the polling place when they allegedly assaulted plaintiff, who himself was attempting to aid and advise other poll-watchers. But for Section 2687 of the Election Code, defendants would not have been in a position to perpetrate the alleged attack. Their conduct was made possible only because defendants were clothed with

---

4. *Flagg Brothers* held that a warehouseman's proposed sale of goods entrusted to him for storage, as permitted by a New York statute, was not state action sufficient for § 1983 jurisdiction. That result does not require a similar conclusion here. The Court expressly recognized that "the settlement of disputes between debtors and creditors is not traditionally an exclusive public function." 436 U.S. at 161, 98 S.Ct. at 1736. Because the conduct of elections is exclusively a public function, the *Flagg Brothers* facts are dispositively different than those here.

the authority of state law and a § 1983 action is appropriate redress for the misuse of that power.[5]

---

5. Defendant Scardizzio, but not defendant Jor-dan, has filed a motion to dismiss. Despite the discussion above, I cannot at this time deny that motion. This is because plaintiff has failed to allege in his complaint that defendant Scardizzio was a poll-watcher on Election Day. Without this indispensable allegation, I am powerless to hear plaintiff's suit:

". . . The established rule is that a plain-tiff suing in a Federal court must show in his pleading, affirmatively and distinctly, the ex-istence of whatever is essential to Federal jurisdiction; and if he does not do so, the court, on having the defect called to its atten-tion or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Smith v. McCullough,* 270 U.S. 456, 459, 46 S.Ct. 338, 339, 70 L.Ed. 682 (1926).

Defendant Scardizzio has admitted in both his answer to plaintiff's complaint and his answers to plaintiff's interrogatories, that he was on Election Day a poll-watcher. Accordingly, the jurisdictional defect here can be corrected easi-ly by amendment. I therefore will grant de-fendant Scardizzio's motion to dismiss with leave granted to plaintiff to amend his com-plaint within twenty days.