O'HAGINS, INC., a California corporation, Plaintiff,

v.

M5 STEEL MFG., INC., a California corporation, et al., Defendants.

And Counter–Action.

No. C 02–4532 SBA.

United States District Court, N.D. California.

July 24, 2003.

Thomas F. Smegal and Irfan A. Lateef of Knobbe, Martens, Olson & Bear, LLP, San Francisco, CA, for Plaintiff.

Steven Goon, Ronald P. Oines, and David J. Zoetewey of Rutan & Tucker, LLP, Costa Mesa, CA, for Defendant.

## ORDER GRANTING O'HAGINS, INC.'S MOTION TO DISMISS DEFENDANT'S FOURTH, FIFTH, SIXTH, AND SEVENTH COUNTERCLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION

ARMSTRONG, District Judge.

Plaintiff O'Hagins, Inc. ("O'Hagins") brings this action against defendant M5 Steel Manufacturing, Inc. ("M5") alleging a single claim for infringement of U.S. Patent No. 6,447,390 (the "'390 patent"), of which O'Hagins is the exclusive licensee. M5 has filed counterclaims against O'Hagins, Harry O'Hagin, and Carolina O'Hagin. M5's Fourth, Fifth, Sixth, and Seventh Counterclaims seek declaratory relief of non-infringement of four patents other than the '390 patent.

Now before the Court is O'Hagins, Inc.'s Motion to Dismiss Defendant's Fourth, Fifth, Sixth, and Seventh Counterclaims for Lack of Subject Matter Jurisdiction (the "Motion to Dismiss"). Having read and considered the papers submitted and being fully informed, the Court GRANTS the Motion to Dismiss and DISMISSES M5's Fourth, Fifth, Sixth, and Seventh Counterclaims WITHOUT LEAVE TO AMEND and WITHOUT PREJUDICE.[1]

### BACKGROUND

O'Hagins designs, develops, manufactures, and markets high-quality, innovative roof tile vent products. On September 10, 2002, the United States Patent and Trademark Office issued the '390 patent to Harry O'Hagin. O'Hagins is the exclusive licensee of the '390 patent with the right to enforce it.

On September 17, 2002, O'Hagins commenced this action against M5 and Con-struction Metals, Inc. Its complaint alleges on information and belief that M5 has made, used, imported, offered to sell and/or sold within the United States, and is currently making, using, importing, offering to sell and/or selling within the United States roof tile vent products that infringe the '390 patent. These products are alleged to include, but are not limited to, the "O'Jimmy's Tile Vents." On October 21, 2002, O'Hagins voluntarily dismissed defendant Construction Metals, Inc. from this action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1).

On November 12, 2002, M5 filed an answer and counterclaims to O'Hagins' complaint, naming O'Hagins, Harry O'Hagin, and Carolina O'Hagin as counterdefendants. The first three counterclaims are asserted against O'Hagins and Harry O'Hagin for declaratory relief of non-infringement, invalidity, and unenforceability, respectively, of the '390 patent. The Fourth, Fifth, Sixth, and Seventh Counterclaims are asserted against all three counterdefendants for declaratory relief of non-infringement, invalidity, and unenforceability of U.S. Patent Nos. D458,391 (the "'391 patent"), D458,392 (the "'392 patent"), D457,234 (the "'234 patent"), and D456,531 (the "'531 patent") (collectively, the "Design Patents"), respectively. M5 alleges that each of these four Design Patents "stems from the same parent application as the '390 patent."

On December 2, 2002, O'Hagins filed the instant Motion to Dismiss, seeking dismissal of M5's Fourth, Fifth, Sixth, and Seventh Counterclaims for lack of subject matter jurisdiction.[2] On the same day,

---

1. This matter is suitable for disposition without a hearing. Fed.R.Civ.P. 78; Civ. L.R. 7–1(b).

2. The Motion to Dismiss was unilaterally re-noticed for hearing six times by O'Hagins pursuant to Civil Local Rule 7–7(a).

O'Hagins filed a Reply to First, Second, and Third Counterclaims for Declaratory Judgment. Carolina O'Hagin has joined in the Motion to Dismiss.

### LEGAL STANDARD

■ Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction. "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir.2001). " 'A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment.' " *Id.* (quoting *Smith v. McCullough*, 270 U.S. 456, 459, 46 S.Ct. 338, 70 L.Ed. 682 (1926)). In adjudicating such a motion, the court is not limited to the pleadings, and may properly consider extrinsic evidence. *See Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir.2000) (citations and quotations omitted). The court presumes lack of jurisdiction until the plaintiff proves otherwise. *See Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir.1989).

### DISCUSSION

O'Hagins moves to dismiss M5's Fourth, Fifth, Sixth, and Seventh Counterclaims for lack of subject matter jurisdiction on the ground that there is no case or controversy with respect to these counterclaims. In its opening brief O'Hagins notes that a court will have subject matter jurisdiction over a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, only if the claimant establishes the existence of an actual controversy between the parties.

Citing authorities from the Federal Circuit, O'Hagins explains that a claimant asserting a declaratory judgment claim for non-infringement of a patent must demonstrate: (1) the defendant's conduct has created an objectively reasonable apprehension that the defendant will initiate an infringement suit if the claimant continues the allegedly infringing activity; and (2) the claimant must have actually produced the device or have substantially prepared to produce the device. O'Hagins asserts that the claimant bears the burden of establishing both parts of the test by a preponderance of the evidence.

Applying this test to M5's Fourth, Fifth, Sixth, and Seventh Counterclaims, O'Hagins points out that its complaint did not allege infringement of the design patents, and it has not attempted to enforce the Design Patents against M5. O'Hagins assails M5's reliance on the two asserted facts that it invokes in claiming that it has a reasonable apprehension of suit: (1) the Design Patents' relationship to the '390 patent and (2) that all three counterdefendants allegedly "have indicated their belief that certain of M5 Steel's products are 'knock-offs' of their patents." O'Hagins claims that the mere fact that it is asserting that M5 has infringed the '390 patent does not make it objectively reasonable for M5 to believe that its products infringe the Design Patents. O'Hagins further points out that M5 has not established that anyone at O'Hagins made any comment to M5 related to the Design Patents. Finally, O'Hagins argues that even if the Court concludes that there is an actual controversy, the Court should exercise its discretion under the Declaratory Judgment Act and decline to exercise jurisdiction over the four counterclaims at issue.

M5 asserts in its opposition brief that this Court has subject matter jurisdiction over the four counterclaims if M5 has a

reasonable apprehension that O'Hagins will sue for infringement of the Design Patents. M5 states that the reasonableness of its apprehension is judged using an objective standard, based on the totality of the circumstances; an express threat is not required. Citing to the supporting declaration of its President and Chief Executive Officer, Douglas Linkon, M5 explains that it makes and sells various models of tile vents for which, M5 believes, it will be sued for infringement by O'Hagins. It asserts that O'Hagins has a "history" of suing M5, although this "history" apparently consists only of a 1995 suit by O'Hagins against M5 for trademark infringement. M5 contends that the Design Patents are "almost identical to some of the drawings in the '390 Patent," which "are purported to be embodiments of the '390 Patent," a utility patent. Appended to a declaration of M5's counsel are copies of relevant portions of the '390 patent and the Design Patents containing the drawings it invokes.

M5 accordingly contends that it has an objectively reasonable apprehension of suit under the totality of the circumstances, which include: "(1) prior litigation by O'Hagins; (2) actual pending litigation on the '390 utility patent; and (3) design embodiments that stem from the same application as the utility patent and are purported to be embodiments of the utility patent." M5 goes on to distinguish certain of the authorities cited by O'Hagins in its opening brief. It argues that, in the event that the Court finds an actual controversy to exist, it should retain jurisdiction in the interest of judicial economy. Finally, it claims that O'Hagins' unwillingness to covenant with M5 not to sue on the Design Patents "speaks volumes."

In its reply, O'Hagins asserts that M5 has failed to substantiate its claim of a reasonable apprehension with *evidence*, instead choosing to rely solely on arguments.

O'Hagins notes that M5 has effectively conceded that no one affiliated with O'Hagins has threatened to sue M5 for infringement of the Design Patents or even commented on the Design Patents. O'Hagins further notes that there is no evidence that the single trademark infringement suit in 1995—the only instance of litigation between the parties—had anything to do with the Design Patents. As for the alleged relatedness of the '390 patent to the Design Patents, O'Hagins contends that the cases cited by M5 in which the declaratory judgment plaintiff was found to have a reasonable apprehension of suit on the related patents are distinguishable because the courts therein relied on the existence of threatened litigation. O'Hagins notes that M5 has not cited to any authority for the proposition that the mere relatedness of one patent-in-suit to other patents gives rise to a reasonable apprehension of suit on those other, related patents. O'Hagins insists that M5's focus on O'Hagins' refusal to covenant not to sue is frivolous, noting that the Federal Circuit has expressly rejected the proposition that a covenant not to sue is required to avoid creating a reasonable apprehension of suit. O'Hagins also argues that M5 has failed to show that the devices depicted in Exhibit 1 to the Linkon Declaration are covered by the Design Patents.

The legal principles governing the Court's consideration of the evidence before it and the parties' arguments are well-settled. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. In interpreting the requirement of an "actual controversy," the Federal Circuit has held that

there must be both "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1052 (Fed.Cir. 1995) (internal quotation marks and citation omitted). A reasonable apprehension of patent litigation "may be induced by subtler conduct if that conduct rises 'to a level sufficient to indicate an intent [on the part of the patentee] to enforce its patent,' i.e. to initiate an infringement action." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed.Cir.1996) (quoting *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed.Cir. 1992)) (alteration in original). The test for determining whether a "reasonable apprehension" of suit exists is an objective one that focuses on the facts existing when the complaint is filed. *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed.Cir.1988).

■ "If [the] defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy." *Id.* When there is no express charge of infringement, the court must consider the totality of the circumstances to determine whether reasonable apprehension exists. *Id.* Proposed or on-going license negotiations are normally insufficient to establish reasonable apprehension until negotiations have broken down. *Phillips Plastics*, 57 F.3d at 1053–54. Yet even when a court determines that an actual controversy exists between the parties, the court is not required to exercise declaratory judgment jurisdiction, but has discretion to decline that jurisdiction. *EMC Corp.*, 89 F.3d at 810.

■ Applying these principles in evaluating the evidence before it, the Court readily concludes that there is no actual controversy with respect to the Fourth, Fifth, Sixth, and Seventh Counterclaims. There is not a hint that O'Hagins has threatened to sue M5 for infringement of the Design Patents or has even considered doing so. None of the three purported items of evidence invoked by M5 in support of its "totality of the circumstances" argument—the prior litigation by O'Hagins, the actual pending litigation with respect to the '390 patent, and the alleged relatedness of the Design Patents to the '390 patent—is sufficient either alone or in combination with the others to give rise to a reasonable apprehension of suit.

It is nonsensical for M5 to assert that the mere fact that O'Hagins sued M5 for trademark infringement eight years ago indicates that O'Hagins will sue M5 for infringement of the Design Patents. Perhaps if M5 could show that O'Hagins' 1995 suit was frivolous, the Court might consider the fact of the earlier suit relevant because it would arguably show that O'Hagins has a litigious disposition. But there is no evidence of the circumstances of the earlier suit, other than that it settled before trial. For M5 to point to this earlier lawsuit as evidence of a "history" of litigation between O'Hagins and M5 that demonstrates that its apprehension is reasonable is more than a little ridiculous.

As for the actual pending litigation and the alleged relatedness of the Design Patents to the '390 patent, the Court agrees with O'Hagins that M5 has cited to no authority standing for the proposition that the mere similarity of certain patents to a patent-in-suit suffices to establish a reasonable apprehension of suit on those patents. The two cases to which M5 cites, *American Dental Technologies, Inc. v. Kreativ, Inc.*, 1997 U.S. Dist. LEXIS 21579 (S.D.Tex. Dec. 4, 1997), and *F.B. Leopold Co. v. Roberts Filter Manufactur-*

*ing Co.*, 1995 WL 776945 (W.D.Pa. Aug. 2, 1995), which are unpublished district court dispositions, do not stand for such a proposition. Moreover, it is far from clear that the three depictions of M5's tile vents appended to the Linkon Declaration are sufficiently similar to any of the Design Patents to give rise to any apprehension of suit. Without any discussion of how the *claims* in the Design Patents may read on these tile vents, the Court cannot reasonably conclude that O'Hagins believes that they infringe the Design Patents.

O'Hagins is further correct that a covenant not to sue M5 for infringement of the Design Patents is not required to avoid creating a reasonable apprehension of suit. *Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1484 (1998). While it is true that O'Hagins' refusal to covenant not to sue is a factor that may be considered in whether M5 has a reasonable apprehension to sue, *id.*, the Court disagrees that its refusal "speaks volumes." For all the Court can tell, O'Hagins may not have fully evaluated whether M5's products infringe the Design Patents, and it therefore has simply chosen not to risk relinquishing a potential patent infringement claim without being better informed. Given that M5 has cited to no authority for the proposition that a patentee's refusal to covenant not to sue, without more, is sufficient to create a reasonable apprehension of suit, the Court declines to find a reasonable apprehension on this basis.

Because it is evident that M5 does not have a reasonable apprehension of suit, the Court need not determine whether M5 has manufactured the devices that may infringe the Design Patents. But even if the Court were to conclude that there is an actual controversy, the Court would decline to exercise jurisdiction over the four counterclaims at issue in its discretion under the Declaratory Judgment Act. Contrary to M5's assertion, assuming jurisdiction over these four counterclaims represents the antithesis of judicial economy. It is not uncommon for patent infringement cases to become unwieldy behemoths that consume tremendous amounts of the Court's resources and time. If this case balloons from involving one patent-in-suit to involving five, it will likely become substantially less manageable. If, however, it becomes clear that there is a compelling case for entertaining M5's requests for declaratory relief on the Design Patents, and if it becomes clear that judicial economy would best be served by bringing those declaratory judgment claims before the same judge who is overseeing the instant action, the Court has plenty of tools at its disposal to bring about the appropriate outcome. In the meantime, the Court sees no reason to set in motion an outcome that may prove to have been unnecessary.

### *CONCLUSION*

The question presented to the Court is not a close call. Mr. Linkon's subjective fears notwithstanding, it is apparent that M5 does not have a *reasonable* apprehension of suit. Accordingly,

IT IS HEREBY ORDERED THAT O'Hagins, Inc.'s Motion to Dismiss Defendant's Fourth, Fifth, Sixth, and Seventh Counterclaims for Lack of Subject Matter Jurisdiction [Docket No. 13] is GRANTED, such that the Fourth, Fifth, Sixth, and Seventh Counterclaims in M5 Steel Mfg., Inc.'s (1) Answer and Affirmative Defenses to Plaintiff's Complaint, and (2) Counterclaims are DISMISSED WITHOUT LEAVE TO AMEND and WITHOUT PREJUDICE for lack of subject matter jurisdiction.

IT IS SO ORDERED.