11-4251-cv
*Cordts-Auth v. Crunk, LLC et al.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Richard C. Lee United States Courthouse, 141 Church Street, in the City of New Haven, on the 9th day of May, two thousand twelve.

PRESENT:

RALPH K. WINTER,
GUIDO CALABRESI,
JOSÉ A. CABRANES,

*Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

RENATE CORDTS-AUTH, *individually and as a member in* CRUNK, LLC, Suing on Behalf of Herself and all Others Similarly Situated,

*Plaintiff-Appellant,*

-v.-                                                                 No. 11-4251-cv

CRUNK, LLC, *d/b/a* CRUNK JUICE, LLC *and/or* CRUNK ENERGY DRINK, SOLVI BRANDS, LLC, CATHY F. HALSTEAD, SAMUEL HOLDSWORTH, LOEB & LOEB, LLP, ROBERT B. LACHENAUER, CATHY F. HALSTEAD REVOCABLE TRUST, PETER A. HALSTEAD REVOCABLE TRUST, TIA TIPPET LAURENT TRUST, OLIVIER NICOLAS LAURENT TRUST, 2003 IRREVOCABLE S CORPORATION TRUST AGREEMENT OF ELIZA FINKELSTEIN DATED JANUARY 1, 2003, 2003 IRREVOCABLE S CORPORATION TRUST AGREEMENT OF JENNIFER FINKELSTEIN DATED JANUARY 3, 2003, MATTHEW FRANK, MARK FRANK, ALEXANDRA FRANK, RUSSELL FRANK, BISON HOLDINGS CORP., TEDRIC

1

HOLDSWORTH, ERIC HOLDSWORTH, ARIEL HOLDSWORTH, WILLIAM MAYHER, DOUGLAS LACHANCE, PAMELA PUTNEY, SARAH MALM, KAREN MALM, GARFIELD SMITH, TOM MAHLKE, *and* LYDIA HOLDSWORTH,[1]

        *Defendants-Appellees*,

SIDNEY FRANK IMPORTING CO., INC. and LEE EINSIDLER,

        *Defendants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FOR APPELLANT:**    AUSTIN R. GRAFF, The Scher Law Firm, LLP, Carle Place, NY.

**FOR APPELLEE:**    DANIELLE L. ROSE (Steven G. Kobre, Scott K. McCulloch, *on the brief*), Kobre & Kim LLP, New York, NY, *for appellees* Crunk, LLC, d/b/a Crunk Juice, LLC and/or Crunk Energy Drink, Solvi Brands, LLC, Cathy F. Halstead, Samuel Holdsworth, Cathy F. Halstead Revocable Trust, Peter A. Halstead Revocable Trust, Tia Tippet Laurent Trust, Olivier Nicolas Laurent Trust, 2003 Irrevocable S Corporation Trust Agreement of Eliza Finkelstein Dated January 1, 2003, 2003 Irrevocable S Corporation Trust Agreement of Jennifer Finkelstein Dated January 3, Matthew Frank, Mark Frank, Alexandra Frank, Russell Frank, Bison Holdings Corp., Tedric Holdsworth, Eric Holdsworth, Ariel Holdsworth, William Mayher, Douglas LaChance, Pamela Putney, Sarah Malm, Karen Malm, Garfield Smith, Tom Mahlke, and Lydia Holdsworth.

JOEL M. MILLER (Claire L. Huene, *on the brief*), Miller & Wrubel, P.C., New York, NY, *for appellees* Loeb & Loeb, LLP and Robert B. Lachenauer.

Appeal from a judgment of the United States District Court for the Southern District of New York (Kenneth M. Karas, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be **AFFIRMED**.

Plaintiff-appellant Renate Cordts-Auth appeals from a judgment of the District Court dismissing her complaint for lack of standing and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and denying her motion to amend the complaint. We assume the parties' familiarity with the underlying facts and the procedural history, some of which we briefly reiterate here.

---

[1] The Clerk is directed to amend the official caption to conform with the caption above.

This appeal arises out of an action brought by plaintiff against her former employer, Crunk, LLC ("Crunk," or the "company"); its parent corporation, Solvi Brands, LLC ("Solvi"); its owners and investors (Crunk, Solvi, and the owner-investor defendants, together, the "Crunk defendants"); and its attorneys, Loeb & Loeb (Loeb & Loeb and its employee, defendant Robert Lachenauer, together, the "Loeb defendants"). Cordts-Auth alleges derivative, direct, and equitable claims against the Crunk defendants, and derivative claims against the Loeb defendants.

## BACKGROUND[2]

Cordts-Auth was a long-time administrative assistant for Sidney Frank, the United States marketer of the Grey Goose brand of vodka ("Grey Goose"). As a result of Cordts-Auth's work for Frank, she was granted a 0.847 percent interest in Grey Goose. When Frank sold the brand in 2004, Cordts-Auth received a payment of approximately $17 million.

Shortly before Frank sold Grey Goose, he began marketing an energy drink and associated products under the name "CRUNK!!!," for which he created Crunk, LLC. Crunk's corporate structure was set out in an Operating Agreement, which became effective on October 3, 2003, and an Amended Operating Agreement (the "Agreement"), executed on March 1, 2004 (together, the "Operating Agreements"). The Agreement provided for the issuance of Performance Units, or "profits interests" in the company.[3] The Agreement distinguished between "owners" of Performance Units—equity owners, or "Members," in Crunk—and "holders" of Performance Units, who were explicitly described as non-owners.

At some point after Frank formed Crunk, Cordts-Auth was hired to continue her duties as Frank's administrative assistant. In March 2005, as consideration for her services to Crunk and Frank, Cordts-Auth received 384,615 Performance Units. The Performance Units entitled her, as a holder of the units, to a share of any proceeds accrued by the company if it were to be sold for an amount over $2 million (the base value of the company at the time the units were granted).

---

[2] The facts set forth in this section are drawn from Cordts-Auth's initial and amended complaints, as well as from the documents she attached to each of her complaints.

[3] Each Performance Unit entitled its holder or owner to a share of any proceeds realized upon the sale of the company above the fair market value of the company as calculated on the day the Performance Unit was issued.

In connection with receipt of the Performance Units Cordts-Auth signed a form, entitled "Agreement to be Bound," in which she agreed to be "treated as an 'Additional Member' for the purposes of" the Crunk, LLC agreement. The form was executed by Cordts-Auth and Jeffrey Peace, the manager and sole Director of Crunk. The form was not executed by Frank. When Cordts-Auth received the Performance Units, Peace amended Exhibit C to the Agreement (the "Peace Amendment"), described in Section 3.4 of the Agreement as a list of Members, to include Cordts-Auth's name. Approximately three weeks after the Peace Amendment added Cordts-Auth to the list of Members of Crunk, Frank executed a Second Amended Operating Agreement which deleted Exhibit C entirely from the Agreement.

Frank died in January 2006, after which his daughter and heir, Cathy Halstead ("Halstead"), began running Crunk. Cordts-Auth alleges that in March 2006, Peter Halstead, Cathy's husband, informed Cordts-Auth that Halstead intended to devalue Crunk and freeze out minority equity holders, a group in which Cordts-Auth alleges she was included. Cordts-Auth protested Halstead's plan, and was thereafter asked to leave Crunk. On March 9, 2007, she entered into a severance agreement by which she received a payment of $2,044,012, and agreed not to pursue litigation against Crunk.

After Cordts-Auth's exit, Crunk's fortunes apparently declined,[4] and the company was soon sold to Solvi—a company of which Halstead was the sole Director—for $550,000. Halstead, as the sole heir to Frank, the initial investor in Crunk, received the entire purchase price. The Loeb defendants represented both Solvi and Crunk in the sale. Soon after the sale, Halstead sent a letter to Cordts-Auth (the "Halstead Letter") informing the latter that the company had been sold, and that because the purchase price was below $2 million Cordts-Auth would not receive any proceeds from the sale. The letter further stated that "all equity interests in Crunk, including your Performance Units, will be cancelled."

---

[4] Halstead alleges that the company lost $1.5 million in 2006, and would have run out of cash entirely under the then-existing ownership structure. In order for Crunk to raise new capital, Halstead claims, it had to be sold to a new owner.

4

On September 18, 2009, Cordts-Auth sued Crunk and several of the current defendants, and on May 27, 2010, she filed an amended complaint (the "Amended Complaint") against all of the defendants. The amended complaint asserts eight causes of action against various defendants: an action for declaratory judgment holding that Cordts-Auth was a Member of Crunk at the time of the sale to Solvi (Count One); equitable claims against the Crunk defendants for access to Solvi's books and records (Count 2) and for an accounting (Count 3); derivative claims against the Crunk defendants for breach of fiduciary duty (Count 4) and tortious interference with a contract (Count 5); **a** direct claim against the Crunk defendants for breach of contract (Count 6); and derivative claims against the Loeb defendants for legal malpractice (Count 7) and breach of fiduciary duty (Count 8). She attached to her Amended Complaint, *inter alia*, each of the documents referenced above.

On September 10, 2010, all defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). The Loeb defendants also moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Shortly thereafter, Cordts-Auth offered to dismiss her own complaint pursuant to Fed. R. Civ. P. 41(a)(2), which permits a plaintiff, with the court's permission, to dismiss her case without prejudice. In her memorandum in opposition to the defendants' motions to dismiss, Cordts-Auth argued that, because she was a Member of Crunk, her citizenship would be attributed to Crunk for the purpose of the diversity analysis. *See Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000) (observing that an LLC is considered to have the citizenship of each of its members). Accordingly, she asserted, the parties lacked complete diversity, there was no federal subject matter jurisdiction, and the case should be dismissed without prejudice.

The District Court heard oral argument on June 2, 2011, and in a written opinion issued on September 27, 2011, dismissed the case in its entirety. The Court first determined that Cordts-Auth was not a member of Crunk, and therefore had no standing to bring any derivative claims. Next, the Court held that, even if Cordts-Auth had been a member at the time of Crunk's sale, she had failed to make a demand upon the Crunk and Loeb defendants sufficient to meet the demand requirement for a derivative action, and that she could not allege demand futility. Finally, the Court held that Cordts-

Auth's breach of contract claim rested upon a fatal misunderstanding of the contract terms, and that her equitable claims for an accounting, access to books and records, and declaratory judgment failed because she was never a Member of Crunk.

On appeal, Cordts-Auth argues that (1) this Court has no subject matter jurisdiction to hear this case, as there is not complete diversity between the parties; (2) the District Court substituted its own judgment for that of the Crunk Board of Directors when the Court held that she had not become a Member of Crunk; (3) the District Court erred when it denied her an equitable exception to the rule that a plaintiff must have an ownership interest in a company at the time of commencing a derivative action against that company; (4) the District Court erred when it found that she had not met the demand requirement for bringing a derivative action; and (5) the District Court erred by not permitting her to amend her complaint to allege demand futility.[5]

## DISCUSSION

A.      *Standard of Review*

"We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiffs' favor." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotation marks omitted).  A complaint must provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

B.      *The Derivative Claims*

"[I]n an action brought in a federal district court on the basis of diversity of citizenship, questions of whether or not [an individual] may bring a derivative action are governed by state law."

---

[5]  Cordts-Auth does not appeal the District Court's dismissal of her cause of action for breach of contract (Count Six of the Amended Complaint).  It is unclear whether she appeals the dismissal of her derivative tortious interference with contract claim (Count Five of the Amended Complaint); however, because we determine that the claim is meritless, we address it with the remainder of her derivative claims.

*Galef v. Alexander*, 615 F.2d 51, 58 (2d Cir. 1980). The parties agree, as a general matter, that Cordts-Auth has standing to bring a derivative claim only if she is found to have been at some point a Member of Crunk. In New York State, a claim is considered to be derivative where "[t]he remedy sought is for wrong done to the [business entity]." *Isaac v. Marcus*, 258 N.Y. 257, 264 (1932). Both of Cordts-Auth's claims against the Loeb defendants, as well as her claims against the Crunk defendants for breach of fiduciary duty and tortious interference with a contract and her putative claim for a constructive trust, are therefore derivative claims.

Whether Cordts-Auth is a "Member" of Crunk is a question of contractual interpretation, and can be determined from the contracts and agreements annexed by Cordts-Auth to her complaint. Upon a review of the record, we conclude that Cordts-Auth is not, and never has been, a Member of Crunk.[6]

Cordts-Auth does not allege that the Performance Units granted to her by Frank were originally intended to grant her a membership interest in Crunk. Instead, she argues, her interest was converted into a membership interest by the amendment to the Crunk Operating Agreement executed by Peace, the sole member of Crunk's Board of Directors. To the extent we determine that the Peace Amendment was ineffective in and of itself to convert her interest into a membership interest, Cordts-Auth argues that the Peace Amendment was later ratified by Frank's heir, Cathy Halstead, and that the ratification completed the conversion of her interest.

i.    *The Peace Amendment*

As the District Court correctly held, the Peace Amendment was ineffective to convert Cordts-Auth's interest into one of membership in the LLC. Cordts-Auth asserts that Peace, by adding Cordts-Auth to Exhibit C of the Operating Agreement, caused her to become a Member of Crunk. Exhibit C is defined in the Amended Operating Agreement as "reflect[ing] the number of Units held by each Member [of the LLC]." Amended Operating Agreement § 3.4 ("Unit Ownership"). Cordts-Auth argues that Peace had the authority to add her to Exhibit C—thereby allegedly adding her to the

---

[6] Because we conclude that Cordts-Auth was never a Member of Crunk, we do not address the parties' arguments regarding equitable membership at the time this suit was filed, and we affirm the District Court's denial of Cordts-Auth's motion to amend her complaint in order to allege demand futility.

7

membership—under the same section of the Amended Operating Agreement. *See id.* ("The Board shall have the right, without further consent or approval of any Member, to amend [Exhibit C] from time to time as is necessary to reflect changes in Units ownership.").

Membership in Crunk was defined solely by the company's Operating Agreements. We therefore examine the text of the Amended Operating Agreement, under which authority the Peace Amendment was allegedly executed, and conclude that Cordts-Auth's argument fails.

Entry of new Members into the membership of the LLC was regulated solely by Section 9.2 of the Amended Operating Agreement. *See* Amended Operating Agreement § 9.1 ("No Person shall be admitted to the Company as a Member . . . except in accordance with Section 9.2. . . . Any purported admission . . . that is not in accordance with this Article IX shall be null and void."). Section 9.2 provides, *inter alia*, that "A Person shall become a[] . . . Member . . . only if and when . . . (c) Members holding a minimum of Two-Thirds . . . of the Class A Units then outstanding consent in writing to such admission." At the time of the Peace Amendment, all Class A Units were held by Frank. It is undisputed that Cordts-Auth never received Frank's written authorization to become a new Member. Accordingly, Peace's inclusion of Cordts-Auth in the Members-only Exhibit C, despite his authority to make ministerial amendments to that exhibit, could have had no effect on her membership status (or lack thereof).[7]

ii.     *The Halstead Letter*

Cordts-Auth next argues that Cathy Halstead's classification of the Performance Units as "equity interests" ratified the Peace Amendment and caused her interest to convert, if it had not done so already, to one of membership. Cordts-Auth's argument is flawed.

---

[7] Because Peace did not have the authority to effect a change in Cordts-Auth's membership status, the document purporting to be an "Amended and Restated Limited Liability Company Agreement of Crunk LLC," entitled "Agreement to be Bound," which Cordts-Auth annexed to the complaint, is likewise ineffective. Although by signing the document Cordts-Auth "agree[d] to be treated as an 'Additional Member' for the purposes of [Crunk's] LLC Agreement," the document, like the Peace Amendment, was executed by Peace and not Frank. The document therefore could not convert Cordts-Auth's interest in Crunk into a membership interest.

In order for the Halstead Letter to have served as a ratification of Cordts-Auth's alleged membership, Halstead must have actually intended to ratify the Peace Amendment by sending the letter. *See Monarch Ins. Co. of Ohio v. Ins. Corp. of Ireland Ltd.*, 835 F.2d 32, 36 (2d Cir. 1987) ("Ratification requires acceptance by the principal of the benefits of an agent's acts, with full knowledge of the facts, in circumstances indicating an intention to adopt the unauthorized arrangement."); *Burden v. Robertson*, 7 F.2d 266, 268 (2d Cir. 1925) ("[O]ne may assume a contract which he did not originally make, or accept the result of an act originally unauthorized . . . if he does [so] with an intent to ratify, and with full knowledge of all the material circumstances." (internal quotation marks omitted)).

Cordts-Auth has not alleged that Halsted intended by her letter to ratify Cordts-Auth's alleged status as a Member. Indeed, she alleges that Halstead's purpose in sending the letter was to disenfranchise Cordts-Auth. It is implausible that an act intended to divest Cordts-Auth of her interest in Crunk would at the same time be intended to convert her interest into one of ownership. The Halstead Letter did not ratify the Peace Amendment.

Because we find that Cordts-Auth was not a Member at the time of Crunk's dissolution, and indeed was never a Member of Crunk, she does not have standing to bring derivative claims on behalf of Crunk or its Members. We affirm the judgment of the District Court with regard to Cordts-Auth's derivative claims.

C.     *Subject Matter Jurisdiction*

Cordts-Auth's claim that the District Court did not have subject matter jurisdiction over her case rests solely upon her alleged status as a Member of Crunk. Having determined that Cordts-Auth was never a Member of Crunk, we affirm the District Court's holding that it had jurisdiction over the matter.[8]

---

[8] At oral argument we observed that Cordts-Auth's allegation in the Amended Complaint that she was a resident, rather than a citizen, of Connecticut was insufficient to invoke our diversity jurisdiction. *See Realty Holding Co. v. Donaldson*, 268 U.S. 398, 399–400 (1925); *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996). However, the parties have since stipulated that Cordts-Auth is indeed a citizen of Connecticut, and that no defendant is a citizen of Connecticut. We therefore deem the pleadings amended accordingly, and find that the pleadings, on their face, properly invoke our jurisdiction. *Smith v. McCullough*, 270 U.S. 456, 460 (1926); *see Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 102–03 (2d Cir. 1997).

D.    *Equitable Relief*

The District Court correctly dismissed Cordts-Auth's equitable claims because it held that she was not a Member of Crunk.  Cordts-Auth admits that her claims for an accounting, access to books and records, and declaratory judgment each depend on a finding that she was a Member of Crunk. Because we affirm the District Court's holding that Cordts-Auth was not a Member of Crunk, we likewise affirm the Court's holding that Cordts-Auth was not entitled to any equitable relief.

CONCLUSION

In conclusion, we have considered each of the appellant's arguments and found them to be meritless.  Accordingly, we AFFIRM the September 27, 2011, judgment of the District Court.

FOR THE COURT,

Catherine O'Hagan Wolfe, Clerk of Court